**CURTIS GALLERY & LIBRARY, a family partnership, H. T. Curtis, Sr., and Ariette R. Curtis, father and mother, Elizabeth J. Curtis, daughter, H. T. Curtis, Jr., son, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

Civ. No. 62–718.

United States District Court
S. D. California,
Central Division.

Oct. 29, 1964.

Elizabeth J. Curtis and H. T. Curtis, Jr., Pasadena, Cal., for plaintiffs.

Thomas R. Sheridan, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

KUNZEL, District Judge.

Both defendant and plaintiffs have moved for summary judgment. Plaintiffs stipulate that the motion of the Government may be treated as if filed against each of them.

### FACTS

The individual plaintiffs in this action operated the Curtis Gallery and Library as a partnership from 1944 to the date of dissolution, December 31, 1956. The partnership at all times during its existence utilized the calendar year basis and the cash method of accounting. From 1944 through 1955 the bookkeeper for the partnership, a Mr. Cusac, kept the partnership books and prepared the annual partnership return of income. In January 1956, Mr. Cusac, then over 80 years of age, retired. He has since passed away. Mr. Ed. Switzer took over as accountant. He obtained extensions of time for filing both the 1956 partnership return and the returns of the individual partners for that year. On December 17, 1957, he suffered an incapacitating stroke without having filed the returns.

Miss Lillian Castellano took over the books in January 1958, and a partnership return for calendar year 1956 was finally filed on February 20, 1959. The return reflected a net loss of $42,718.22, including the sum of $31,167.52 denominated, "loss disclosed by audit." Based upon the premise that the latter sum was a proper partnership deduction in 1956, each of the individual plaintiffs asked for tax refunds in each of the years 1953–1959, in various sums.

The Internal Revenue Service entirely disallowed the claimed deduction of $31,-167.52. A net operating loss of $11,550.-70 was allowed as claimed on the 1956 partnership return however, and was allocated equally among the partners. The loss allocable to Hunley Curtis, Jr., was utilized in 1954 and 1956, giving rise to refunds in the respective amounts of $258.54 and $224.00, which were set-off against deficiencies assessed against the taxpayer for the years 1958 and 1959 of $665.00 and $783.00. The excess deficiency was satisfied by taxpayer on August 8, 1963, by payment. The loss carry-over was exhausted in 1957. The procedure was similar with respect to each of the other individual plaintiffs in this action.

Despite differences in characterization and terminology, the following facts appear undisputed from previous affidavits and exhibits filed by both sides. The original partnership bookkeeper, in computing the "net income" (Int.Rev.Code of 1939) or "taxable income" (Int.Rev. Code of 1954) of the partnership for each year 1944–1955, failed to deduct as expenses of the partnership any funds received as "draw" by Hunley Curtis, Sr., from the partnership during those years. Consequently, the "net income" or "taxable income" of each partner was overstated in each of those years by the proportion of that amount received by Curtis, Sr., corresponding to each partner's distributive share of the partnership proceeds. The amount received by Curtis, Sr., in each year is set out on page 2 of defendant's Memorandum in Support of Motion for Summary Judgment, filed May 11, 1964.

The partnership should, of course, have deducted the amounts received by Curtis, Sr., in each of the respective years. Failing to do so, timely claims for refund should have been filed by the individual partners with respect to each of the years from 1944 through 1955 in which their individual income taxes were overpaid because of overstating their distributive shares of partnership income.

The first written claim of any overpayment of income tax with respect to any of the years in question, an Application for Tentative Carryback Adjustment (Form 1045), was filed on February 20, 1959, and requested a refund for each of the years 1953, 1954, and 1955. The Government admits that the application was timely with respect to the calendar year 1955. The question is whether or not the taxpayers have filed timely claims with respect to any of the other years from 1944 through 1954.

## DISCUSSION

A. In computing "net income" or "taxable income", deductions are to be taken for the taxable year which is the proper taxable year under the taxpayer's method of accounting. Int.Rev.Code of 1939, Ch. 2, § 43, 53 Stat. 1; Int.Rev.Code of 1954, § 461. A taxpayer who keeps his books and reports his income on the calendar year basis and according to the cash method of accounting can deduct payments made for items of expense only in the taxable year in which actually made. Treas.Reg. 111, § 29.41–2 (1939); Treas. Reg. 118, § 39.41–2 (1939); and Treas. Reg. §§ 1.446–1(c)(1), 1.461–1(a) (1954). The failure of the partnership to deduct the payments to Curtis, Sr., in each of the respective years of payment has caused the individual plaintiffs to overstate their distributive shares of partnership income in each of the years of payment. However, the calendar years 1944 through 1954 are closed by statutes of limitation. Int.Rev.Code of 1954, § 6511(d)(2). By having failed to file timely claims for refund with respect to each of the years in question, the plaintiffs cannot recover any overpayment of tax for those years in the present proceeding. Int.Rev.Code of 1939, Ch. 2, § 3772(a), 53 Stat. 1; Int. Rev.Code of 1954, § 7422(a). The Internal Revenue Service concedes that 1955 is still open. [But Curtis, Jr., had *no* distributive share at all in that year so he is entitled to no refund for that year. (See plaintiffs' Ex. II, attached to original complaint.)]

Nevertheless, the taxpayers offer two reasons why the statutes of limitation are not applicable to them. First, they contend [1] the cumulative amount received by the father, Curtis, Sr., can be likened to an "embezzlement" and is, thus, a "theft loss" deductible fully in the year of its discovery. Second, Int.Rev.Code of 1954, §§ 1311–1315, denominated "Mitigation of Effect of Limitations", cover the present situation and operate to suspend the statute of limitations here.

█ Losses from theft are deductible in the year of their discovery. Int. Rev.Code of 1954, § 165(e); 5 Merten, Federal Income Taxation, §§ 28.47, 28.59. However, it is clear that there has been no theft stemming from Mr. Cusac's mistake, as that term is conventionally understood within the meaning of California law. Cal.Pen.Code § 484. It is also clear that whether or not a theft occurs is dependent upon the law of jurisdiction in which the alleged loss took place. Norton v. Commissioner, 40 T.C. 500 (1963).

█ B. Int.Rev.Code of 1954, §§ 1311–1315 mitigate the normal effect of the statute of limitations in certain specified situations. (Int.Rev.Code of 1939, Ch. 2, § 3801, 53 Stat. 1, is not different in substance, so all reference will be to Int.Rev.Code of 1954.) These sections are designed to prevent either the taxpayer or the Government from taking advantage of certain types of errors made in a closed year. But to obtain the relief, *all* the following conditions must be met:

1. There must have been a "determination" for some other year or as to some other taxpayer.

2. The party who prevailed, with two exceptions, one of which covers the present situation, must have maintained a position inconsistent with the erroneous treatment. Int.Rev. Code of 1954, § 1311(b).

3. There must have been an error in a year now closed. Int.Rev.Code of 1954, § 1311(a).

4. The error must have been of a kind specified in Int.Rev.Code of 1954, § 1312.

It goes without saying that the third condition is met since the taxpayers are obviously foreclosed for the years 1944 through 1954. As for the fourth condition, the Government concedes that, assuming the presence of a "determination", there is present here a "substance of adjustment" as described by Int.Rev. Code of 1954, § 1312(4): "The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer."

The substantial questions to be answered are whether the first and whether the second conditions are met.

1. *Has there been a "determination"?*

█ The Government maintains that there has been no "determination" within the meaning of Int.Rev.Code of 1954, § 1313. Its position is that there has been no "final disposition * * * of a claim for refund" as defined by Int. Rev.Code of 1954, § 1313(a) (3) (B), because that section requires an "expiration of the time for instituting suit" with respect to the claim for refund before the District Director's decision on the refund claim becomes a "final disposition." The contention is made that the existence of the present suit, begun before the expiration of the two-year time limit for instituting that suit, prevents a "final disposition" and, hence, a "determination" under the Int.Rev.Code of 1954.

The Code, on its face, does provide that claims for refund which are *disallowed* become final only upon the expiration of the time for bringing suit for refund, two years from the date of mailing of the notice of disallowance. Int.Rev.Code

---

[1]. This was the principal original contention but subsequently impliedly abandoned. See page 3 of plaintiffs' memorandum filed July 24, 1964.

of 1954, §§ 1313(a)(3)(B), 6532(a)(1). Under Treas.Reg. § 1.1313(a)–3(c), disallowance is not a "final disposition," and thus not a "determination" until this two-year period expires. But here, the Director disallowed only a portion of the claim *while allowing* a portion. See defendant's Proposed Findings and Conclusions, page 4. The Court of Appeals for the Fifth Circuit held, in a similar although not identical situation, that there was a "final disposition," and, hence, a "determination":

> " * * * allowance of that part of each claim not barred by the statute of limitations was a determination by the Commissioner accepting the correctness of the readjusted inventories * * * [and] constituted 'a final disposition by the Commissioner of a claim for refund' within the statutory definition." United States v. Rachal, 312 F.2d 376, 379 (5th Cir. 1962).

Consequently, it must be concluded that there was a "determination."

2. *Do taxpayers meet the conditions for the "circumstance of adjustment" exception described in Int.Rev.Code of 1954, § 1312(4) and thereby avoid the second condition described in Int.Rev.Code of 1954, § 1311(b)?*

Under Int.Rev.Code of 1954, § 1312(4) an adjustment is allowed when a determination disallows a deduction or credit which should have been, but was not, allowed to the taxpayer for another taxable year. The potential danger of indefinite postponement of the running of the period of limitations was met by a condition that mitigation provisions would apply to a determination under Int.Rev.Code of 1954, § 1312(4) only if a credit or refund attributable to the deduction which should have been taken in the earlier year was not barred by any law or rule of law *at the time the taxpayer first maintained in writing that he was entitled to the deduction "for the taxable year" to which the determination relates.* Int.Rev.Code of 1954, § 1311(b)(2)(B); 2 Merten, Federal Income Taxation, §

1408(a); Pearl Assurance Co. v. United States, 324 F.2d 512 (Ct.Cl. 1963).

■■ The contention that taxpayers have failed to meet this test must be sustained. The earliest conceivable time when the taxpayers maintained in writing their entitlement was February 20, 1959, when all years except 1955 were already foreclosed as previously indicated. Taxpayers are, therefore, unable to meet the conditions for the application of Int.Rev.Code of 1954, § 1312(4). If this were not so, the present statute of limitations would be entirely ineffective as a bar to *any* kind of mistake or oversight involving a deduction or credit on the part of a taxpayer where the taxpayer files a claim for refund. Int.Rev.Code of 1954, §§ 1311–1315, were clearly not intended to achieve such an abrogation of the statute. Olin Mathieson Chemical Corp. v. United States, 265 F.2d 293 (7th Cir. 1959). Taxpayers are, consequently, not entitled to mitigation under the circumstances of this case.

■ C. It may be noted briefly that taxpayers contend that they come within another "circumstance of adjustment," namely, that of Int.Rev.Code of 1954, § 1312(1), "Double Inclusion of an Item of Gross Income." The section, by its own terms, does not apply because it requires a determination including in the gross income of one partner an item erroneously included in the gross income of another partner for the same taxable year, and here the payments to Curtis, Sr., were not *erroneously* included in his income.

D. Taxpayers seek damages in the amount of $150.00 on the grounds that they were denied an "independent" informal conference, and that they were forced to spend $150.00 in order to obtain "enrolled" representation because the Internal Revenue Service refused to allow the present bookkeeper, Lillian S. Castellano, to represent the taxpayers for the purposes of filing a "protest".

■ Taxpayers' first contention is contradicted in the uncontroverted affidavit of John F. Hauner, the employee

of the Internal Revenue Service assigned to handle plaintiffs' informal conference. Treas.Reg. § 601.105(a)(4) (1955). Plaintiffs have introduced no affidavits in support of their contention and, hence, have not met their burden of proof.

██ As for the second contention, it appears that one individual may, indeed, represent another individual who is his "regular full-time employer". 31 C.F.R. § 10.7(a)(1). It is alleged that Miss Castellano was and is the full-time employee of the individual plaintiffs. However, the same regulation permits such representation only if there is presented to the Internal Revenue Service "satisfactory identification". By plaintiffs' admissions (Plaintiffs' Memorandum of Points and Authorities * * * in Opposition to Defendant's Motion for Summary Judgment * * *, page 10) it appears that the Government refused to let her represent plaintiffs at that time because there was no "proper" power of attorney submitted to the Internal Revenue Service. Plaintiffs present no documents or affidavits to show, nor do they contend, that the Government was unreasonable in taking that position, that is, that the identification was unsatisfactory to it.

The Government's argument that this claim is precluded by the doctrine of sovereign immunity need not be considered.

██ E. Can an action for overpayment of interest be maintained at this time? As previously indicated, on August 8, 1963, the tax deficiencies for 1958 and 1959 were satisfied by payment. In the amended complaint taxpayers allege that they overpaid interest on those deficiencies in the amount of $6.52. Whatever the merits of this contention, the taxpayers should file a claim for refund with the Internal Revenue Service first. Int.Rev.Code of 1954, § 7422(a).

## CONCLUSION

Since H. T. Curtis, Jr., did not share in the partnership proceeds for 1955, the Government's motion as to summary judgment will be granted as to him.

Partial summary judgment will be granted on the Government's motion as to H. T. Curtis, Sr., Ariette R. Curtis and Elizabeth J. Curtis covering all years prior to 1955.

Hearing will be held November 16, 1964, at 10 o'clock A.M., in Hearing Room 256, United States Court House, Los Angeles, California, for the purpose of determining amounts due, if any, to the foregoing taxpayers.

This memorandum shall constitute findings of fact and conclusions of law. The Government shall prepare an order in accordance herewith.