**CURTIS GALLERY & LIBRARY, INC.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 20112.

United States Court of Appeals
Ninth Circuit.

Oct. 26, 1967.

Rehearing Denied March 6, 1968.

H. T. Curtis, Pasadena, Cal., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Karl Schmeidler, Atty., Tax Division, Dept. of Justice, Washington, D. C., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY, Circuit Judges, and TAYLOR,* District Judge.

DUNIWAY, Circuit Judge:

The appellants in this case are H. T. Curtis, Sr., Ariette R. Curtis, his wife, Elizabeth J. Curtis and H. T. Curtis, Jr. The action is one to recover income taxes claimed to have been illegally collected. The final judgment awards to Elizabeth J. Curtis the principal sum of $80.46 and to H. T. Curtis, Sr., the principal sum of $262.97. The United States has also appealed. It attacks only the award to Elizabeth. The opinion of the trial court is reported at 241 F.Supp. 312.

The Curtis Gallery & Library, a family partnership in which appellants were partners, employed the services of a Mr. Cusac from 1944 to 1955 to keep the partnership books and prepare the annual partnership tax returns. During this period he improperly treated amounts withdrawn by one of the partners as income rather than withdrawals from capital. This error resulted in overstatement of partnership income and accordingly overstatement of each partner's distributive share of such income for each of the years in question, 1944–55.

The error was discovered in 1959 during the preparation of the final partnership return for 1956, the year in which the partnership was dissolved.

In its return for 1956, the partnership likened the total amount of the foregoing overstated income, $31,167.52, to an embezzlement, and claimed it as a deduction in 1956, the year in which the "loss" was discovered, pursuant to section 165(e) of the Internal Revenue Code of 1954. Employing the carry-back and carry-forward provisions of the same code, each of the partners claimed refunds for several other years. The Commissioner of Internal Revenue ultimately disallowed the deduction, although he did allow as a deduction for 1956 the amount that the partnership had actually lost in the course of its business operations for that year, and he did allow carry-back and carry-forward use of that loss. Following disallowance of the claimed deduction, the taxpayers filed this suit, alleging: 1) The deduction should have been allowed as a theft loss in 1956; 2) Disallowance of the deduction entitled the taxpayers to refunds for the years 1944–1955 under the provisions of sections 1311–1314 of the Internal Revenue Code of 1954; and 3) The taxpayers suffered $150 damage from the wrongful refusal of the Internal Revenue Service to allow the taxpayers' bookkeeper to represent them during a proposed informal conference concerning the claimed deduction and from the wrongful denial of an "independent" formal conference.

The district court held that the deduction was not allowable as a theft loss, that the Commissioner had properly refused to allow the taxpayers' bookkeeper to represent them, and that they had not been denied an independent informal conference. The court also held that the provisions of sections 1311–1314 were applicable, but that the taxpayers were entitled to refunds only for 1955. It determined that refunds were due for 1955 in the amount of $80.46 to Elizabeth Curtis and for 1957 in the amount of

* United States District Judge Fred M. Taylor, sitting by designation.

$262.97 to H. T. Curtis, Sr. The third partner, H. T. Curtis, Jr., had reported no income for 1955 and was thus not entitled to any refund.

The government suggests that we do not have jurisdiction of the taxpayers' appeal. The basis for this suggestion is as follows: On November 13, 1964, a summary judgment was entered, ordering that Curtis Jr. take nothing, that Curtis Sr. and wife and Elizabeth take nothing for any year prior to 1955, and that "consistent with the above, this action is hereby dismissed with prejudice," with costs of $20.00 to defendant. It·was further ordered that there be a hearing to determine the amounts, if any, due to Curtis Sr. and wife and Elizabeth. All plaintiffs filed a notice of appeal from this judgment on January 11, 1965. No other notice of appeal was filed.

Further hearings were held, resulting in the filing of memoranda of decision on March 1, 1965, November 20, 1965, February 23, 1966, and March 16, 1966, when a final judgment was entered. Plaintiffs filed their designation of contents of record on appeal and statement of points on appeal on April 18, 1966. They did not file another notice of appeal. They did, however, manifest concern about the continuing validity of the notice of appeal that they had filed. Thus, on February 8, 1965 they wrote a letter to the court asking for a prompt final decision. In it, they point out that they had already been granted by the court the maximum permissible extension of time in which to designate and docket their appeal, that that time would expire on April 9, 1965, and that unless final judgment were entered by March 1, they would not have the necessary 40 days within which to docket their appeal.

The government argues, correctly, that the November 13, 1964 summary judgment was not a final judgment, and that, because no notice of appeal from the March 16, 1966 final judgment was filed, we lack jurisdiction. To this there are two answers.

■ First, under the rationale of our decision in Ruby v. Secretary of U. S. Navy, 9 Cir. 1966, 365 F.2d 385, cert. denied, 1967, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442, we can treat the notice of appeal of January 11, 1965 as a premature but ultimately effective notice of appeal from the final judgment of March 16, 1966. We are disposed to do so here because plaintiffs were, and are, proceeaing in pro. per., and because their February 18, 1965 letter made it clear that they thought that their appeal would apply to the final judgment, when entered. Thus the court and the United States were on notice of their position. We are not to be taken as saying that we will so treat every premature notice of appeal, no matter how obvious it may be that the judgment or order appealed from is not final, and no matter how long the time interval between filing of the notice and entry of the final judgment may be. We confine ourselves to this case. Here, the January 11, 1965 judgment disposed of all of the major issues in the case; all that was left was computation. The long time interval was a product of a combination of the court's remarkable patience and of the parties' repeated requests for reconsideration of each attempt that the court made to settle the problem.

■ Second, we can treat the appellant's designation of contents of record on appeal and statement of points on appeal, both of which were timely filed, as the equivalent of a notice of appeal. These documents make two things abundantly clear; first, that appellants desire to appeal, and second, that they are attacking both the final judgment and the interlocutory summary judgment. Compare the following cases: Poe v. Gladden, 9 Cir., 1961, 287 F.2d 249, 251; Yanow v. Weyerhaeuser Steamship Co., 9 Cir., 1959, 274 F.2d 274, 282–283 and cases there cited; Carter v. Campbell, 5 Cir., 1960, 285 F.2d 68, 70–72.

■ We turn to the merits. The court was obviously correct in holding that there was no theft loss within the meaning of section 165(e) of the Internal Revenue Code of 1954. There is not the

slightest evidence that anyone stole or embezzled anything.

 The court was also correct in holding that appellants were not entitled to damages because the Internal Revenue Service refused to allow their part-time bookkeeper to represent them at an informal conference. She was not a full time employee; she was not enrolled. See 31 C.F.R. § 10.7(a) (1). And the only evidence in the record shows that appellants were not denied an "independent" informal conference.

 The only significant issue is whether sections 1311–1314 of the Internal Revenue Code of 1954 are applicable. We hold that they are not. A number of conditions must be met before taxpayers can take advantage of these sections. We pass over, without decision, all of them except one. Section 1311 requires that there be a determination "described in one or more of the paragraphs of section 1312." Section 1312 contains six paragraphs describing "the circumstances under which the adjustment provided in section 1311 is authorized." Appellants assert that the circumstances of this case are described in paragraphs (1) and (6). They expressly disclaim reliance on any other paragraph.

Paragraph (1) reads:

"(1) Double inclusion of an item of gross income.—The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer."

This does not describe the circumstances here. The Commissioner has not required the inclusion in the income of taxpayers for 1956 of any item of income which was erroneously included in the income of any of them for a prior year. He has required inclusion for 1956 of nothing except 1956 income. He has not allowed the taxpayers to reduce their 1956 income by the amounts by which they overstated income in prior years. But that is not a circumstance described in paragraph (1).

Paragraph (6) is even more clearly inapplicable. It deals solely with the determination of the basis of property, which is not here involved at all.

 During the proceedings in the trial court, the government suggested that paragraph (4) might apply, and the trial court accepted the suggestion. Before us, both the government and the taxpayers say that the paragraph does not apply. They are right. Paragraph (4) reads:

"(4) Double disallowance of a deduction or credit.—The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer."

Here, the Commissioner did disallow the taxpayers' claimed deduction for 1956. But, as applied to the earlier years, there is not here involved either a deduction or a credit that should have been allowed in any of those years. Throughout the code, deductions are referred to as amounts paid or incurred by the taxpayer that may be subtracted from gross income in order to arrive at taxable income. See, e. g., sections 161–182, 211–217. The Commissioner did not disallow any deductions in prior years. He merely accepted the taxpayers' own overstatement of their income. A correction of that error would not have been the allowance of a deduction. Nor is there here involved a credit which should have been but was not allowed in the prior years. The word credit too, has a special meaning—credit against tax. See, e. g., sections 31–48. Nothing of that sort is involved here. Not every error that is discovered after the statute of limitations has run will bring sections 1311–1314 into play. The taxpayer must bring himself within the circumstances described in section 1312. See Olin Mathieson Chem. Corp. v. United States, 7 Cir., 1959, 265 F.2d 293; Brennen v. CIR, 1953, 20 T.C. 495.

In its opinion, the trial court held that there was a "determination" as defined

in section 1313 and required by section 1311, and that the taxpayers had met the special requirements of section 1311(b) (2) (B). We do not pass on either of these questions.

The judgment in favor of Elizabeth J. Curtis is reversed. In all other respects the judgment is affirmed.