551 F.2d 918
 14 Fair Empl.Prac.Cas. 1348, 43 A.L.R.Fed. 191,
13 Empl. Prac. Dec. P 11,598
 Dionysius RICHERSON et al., Appellant in No. 76-1762,
v.
Captain Gerald R. JONES, United States Navy, Commanding
Officer, Philadelphia Naval Shipyard, Appellant in
Nos. 76-1385, 76-1695.
 Nos. 76-1385, 76-1695 and 76-1762.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 30, 1976.
Decided March 7, 1977.
 
 Ronald R. Glancz, Donald Etra, Attys., App. Sec., Civil Div., Dept. of Justice, Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David W. Marston, U. S. Atty., Philadelphia, Pa., for Gerald R. Jones.
 Richard S. Meyer, John L. Braxton, Philadelphia, Pa., for Dionysius Richerson; Dilworth, Paxson, Kalish & Levy, Braxton, Johnson & Kopanski, Philadelphia, Pa., of counsel.
 Before ROSENN, KALODNER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 This appeal and cross-appeal arise from an employment discrimination action brought by a federal employee under Section 717 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16.[1] Richerson, (the plaintiff-appellant), a black engineer employed by the Philadelphia Naval Shipyard, alleged that his supervisors at the Shipyard had denied him advancement because of his race. As required by statute,[2] Richerson named the commanding officer of the Shipyard at present Captain Gerald R. Jones as the nominal defendant. (Inasmuch as the United States is the real defendant, references hereinafter made to the defendant will be in terms either of the Government or the United States.) After a nonjury trial, the district court found that Richerson had in fact been the victim of discrimination. To remedy the discrimination, the court awarded Richerson several retroactive promotions with back pay and prejudgment and postjudgment interest as well as counsel fees and expenses. The district court, however, refused Richerson's request for punitive damages thereby giving rise to Richerson's appeal.
 
 
 2
 The government does not contest the court's finding of discrimination or its award of counsel fees and expenses. Instead, it contends that the retroactive promotion of Richerson from GS-11 to GS-12 was not supported by the evidence and that the court erred in assessing interest against the United States.
 
 
 3
 We have concluded that Richerson's retroactive promotion to GS-12 must be vacated and remanded for additional fact finding, that the district court erred in assessing interest against the government, and that the district court was correct in refusing to award punitive damages. In view of these actions, we have also directed that the district court make those findings required in connection with its award of counsel fees.
 
 I.
 JURISDICTION
 
 4
 Before reaching the merits of this case, we must first determine whether we have jurisdiction over the government's and Richerson's appeals. Each appealed from different orders of the district court. Each claims that we have jurisdiction to entertain his appeal under 28 U.S.C. § 1291,[3] and each contends that the order from which he appealed was the "final" one.
 
 
 5
 Notices of appeal in this case were filed from three separate orders of the district court. On December 18, 1975, the court issued an order which incorporated its findings of fact and conclusions of law and stated simply that "judgment is entered for plaintiff and against defendant." Although the government filed a timely notice of appeal from that order (docketed as No. 76-1385), it does not now contend that that order was a "final" one. Since that order unquestionably was not final[4] and since no basis for appellate jurisdiction other than 28 U.S.C. § 1291 has been claimed,[5] the government's appeal in No. 76-1385 must be dismissed for lack of subject matter jurisdiction.
 
 
 6
 The government also filed a timely notice of appeal (docketed as No. 76-1695) from the district court's order of March 12, 1976. That order awarded Richerson retroactive promotion, back pay, and interest but did not include provisions respecting attorney's fees, which were also sought in Richerson's complaint.
 
 
 7
 Finally, on April 29, 1976, the court entered an order awarding counsel fees and expenses to Richerson. Both the government and Richerson filed timely notices of appeal from that order. Later, however, "after the Solicitor General determined that the government would take no appeal from the award of attorney's fees,"[6] the government voluntarily dismissed its appeal from the order of April 29, 1976. Richerson's appeal from that order has been docketed as No. 76-1762.
 
 
 8
 The government argues that the order of March 12 was the final order because it "decided the merits of the case." Reply Brief for Appellant at 2. Citing Swanson v. American Consumer Industries, Inc., 517 F.2d 555 (7th Cir. 1975), it maintains that the April 29 order awarding counsel fees was "incidental" to the main litigation and did not "affect the finality of the decision on the merits." Reply Brief for Appellant at 2. Richerson, on the other hand, argues that Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), requires that the April 29 order be considered the "final order" for purposes of our jurisdiction.
 
 
 9
 We agree with Richerson that the order of April 29 is the final order in this case. As the Supreme Court has stated, a final order is one which "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." St. Louis, Iron Mountain and Southern Ry. Co. v. Southern Express Co., 108 U.S. 24, 28-29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883). See also Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); J. Moore, Federal Practice P 110.08(1) at 118. Applying this rule in Liberty Mutual Insurance Co., the Court held that an order which settled the issue of liability was not final because it did not dispose of the plaintiffs' prayers for relief. The Court noted that the plaintiffs in that case " requested an injunction, but did not get one; they requested damages, but were not awarded any; they requested attorney's fees, but received none." (Emphasis added.) 424 U.S. at 742, 96 S.Ct. at 1205. The Court also observed that judgments which left the "assessment of damages or awarding of other relief" unresolved "have never been considered to be 'final' within the meaning of28 U.S.C. § 1291." Id. In this case, since the March 12 order did not dispose of Richerson's prayer for substantial attorney's fees, it was not a final order.
 
 
 10
 Swanson v. American Consumer Industries, Inc., supra, upon which the government relies in arguing that the March 12 order was final, is readily distinguishable from the instant case. Swanson was a stockholder's derivative action in which the district court entered one order which disposed of all the claims between the plaintiff and the defendant and a subsequent order which required the successor of the corporation on whose behalf the action was maintained to reimburse the individual stockholder who had initiated the action for the reasonable attorney's fees he had incurred. Swanson held that the first of these orders was the final order and that the second was "incidental to the main litigation." Id. at 561. That court appears to have reasoned that the first order terminated the litigation between the parties, leaving unresolved only the award of attorney's fees between the plaintiff stockholder and the corporation on whose behalf he sued. In this case, by contrast, the plaintiff requested that his reasonable attorney's fees be assessed against the defendant with whom he was litigating in an adversary context, not a "co-plaintiff" whose position he was supporting. Consequently, the order of March 12, which left the issue of attorney's fees unresolved, did not terminate the litigation between Richerson and the government and, thus, was not a final order.
 
 
 11
 The order of April 29, on the other hand, did dispose of the last of Richerson's prayers for relief. Therefore it was a final order appealable under 28 U.S.C. § 1291. As a result, we clearly have jurisdiction over Richerson's appeal.
 
 
 12
 Although the government's notice of appeal in No. 76-1695 was technically taken from the non-final order of March 12, we have concluded that jurisdiction nevertheless obtains over this appeal as well as Richerson's. As we have indicated, in Liberty Mutual Insurance Co. v. Wetzel, supra, the court at no time had a final order before it. In this case, we do. We believe, as the Ninth Circuit has frequently held, that a premature appeal taken from an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party. Eason v. Dickson, 390 F.2d 585 (9th Cir. 1968); Curtis Gallery & Library, Inc. v. United States, 388 F.2d 358 (9th Cir. 1967); Ruby v. Secretary of United States Navy, 365 F.2d 385 (9th Cir. 1966); Firchau v. Diamond National Corp., 345 F.2d 269 (9th Cir. 1965); 9 J. Moore, Federal Practice P 204.14 at 982.6a Here, Richerson has never claimed that his rights would be prejudiced if we exercised jurisdiction over the government's appeal. Indeed, both in his brief and at oral argument, Richerson offered to "stipulate to any acceptable procedure which would save the (government's) appeal."[7] Brief for Appellee at 1 n. 1. Consequently, we are satisfied that Richerson's rights are not prejudiced by our regarding the government's appeal as having been taken from the final order of April 29. We conclude, therefore, that we have jurisdiction over Richerson's and the government's respective appeals.
 
 II.
 RETROACTIVE PROMOTION
 
 13
 As part of its order of March 12, 1976, the district court awarded Richerson three retroactive promotions with back pay. The court directed that Richerson be promoted to GS-9 effective November 15, 1970; to GS-11 effective November 15, 1972; and to GS-12 effective November 15, 1974. On appeal, the government argues that the evidence does not support Richerson's retroactive promotion from GS-11 to GS-12. Before addressing that question, we must first examine the legal standards which govern court orders requiring promotion of plaintiffs in actions brought under the Equal Employment Opportunity Act of 1972.
 
 
 14
 The authority of courts to grant relief in actions brought under the Equal Employment Opportunity Act of 1972 is governed by the same statutory provision which applies in actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g).[8] 42 U.S.C. § 2000e-5(g) authorizes courts to order "such affirmative action as may be necessary" to remedy unlawful employment practices. However, that provision also states:
 
 
 15
 No order of the court shall require . . . promotion of an individual as an employee . . . if such individual . . . was refused . . . advancement . . . for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this title. (Emphasis added.)
 
 
 16
 Consequently, the district court in this case could order retroactive promotion of Richerson to GS-12 only if it found that Richerson would have attained that position but for the defendant's unlawful employment practices. Day v. Mathews, 174 U.S.App.D.C. 231, 530 F.2d 1083, 1085 (1976).8a
 
 
 17
 The district court in this case failed to make the findings necessary to justify its order directing that Richerson be promoted to GS-12 retroactive to November 15, 1974. Nor did it indicate that evidence which would support such findings. Instead of finding that "but for the discrimination" Richerson would have been promoted to GS-12 on that date, the court found only that Richerson would have attained a GS rating above GS-9:
 
 
 18
 70. But for the unlawful discrimination against plaintiff by defendant, plaintiff would as of this date attained a GS rating above GS-9.
 
 
 19
 The district court's failure to make a specific finding as to this critical fact (as required by Fed.R.Civ.Proc. 52(a)) would not require a reversal if the evidence and the court's other findings clearly elucidated the basis for its award. Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943); Estate of Hooper v. Govt. of Virgin Islands, 427 F.2d 45, 48 (3d Cir. 1970); Feeley v. United States, 337 F.2d 924 (3d Cir. 1964). Unfortunately, we cannot obtain a clear understanding of the basis for the court's award from its other findings. The only other findings relevant to this issue are the following:
 
 
 20
 67. But for the unlawful discrimination against Richerson by defendant, Richerson would have been appointed as an electrical engineer GS-9 as of November 15, 1970.
 
 
 21
 68. Under Civil Service Regulations, the required time in grade GS-9 before being eligible for promotion to GS-11 is one year.
 
 
 22
 69. Under Civil Service Regulations, the required time in grade GS-11 before being eligible for promotion to GS-12 is one year.
 
 
 23
 The only explanation for the court's conclusion which emerges from these findings is that the court relied exclusively upon the minimum "time in grade" requirements for promotion to GS-11 and GS-12. But those "time in grade" requirements by themselves cannot adequately explain the court's determination. If Richerson had been promoted to GS-11 and to GS-12 in the minimum time allowed, he would have attained the rank of GS-12 as of November 15, 1972, rather than as of November 15, 1974, as the court's order reflects. Nowhere does the court discuss the relevant evidence or make findings with respect to other qualifications necessary for the classification to which it held Richerson was entitled.[9] In sum, since we are unable to determine the basis upon which the district court awarded Richerson retroactive promotion to GS-12, that portion of the district court's order must be reversed and the case must be remanded so that the district court may make specific findings of fact (on this record or as it may require supplementation) with respect to the classification which Richerson would have achieved but for the defendant's discriminatory acts.[10] On remand, the government will bear the burden of proving by a preponderance of the evidence that even absent discrimination Richerson's qualifications were such that he would not have been selected for the GS-12 position. Ostapowicz v. Johnson, 541 F.2d 394, 399 (3d Cir. 1976); United States v. International Union of Elevator Constructors, 538 F.2d 1012, 1017 (3d Cir. 1976). Cf. Day v. Mathews, 174 U.S.App.D.C. 231, 530 F.2d 1083, 1085 (1976) (burden of "clear and convincing evidence").
 
 III.
 INTEREST
 
 24
 In its order of March 12, the district court required the defendant to pay Richerson prejudgment and postjudgment interest on the award of back pay. This was error. Although the commanding officer of the Shipyard was the nominal defendant against whom Richerson's action had to be brought under 42 U.S.C. § 2000e-16(c), in reality Richerson's claim was against the United States. It is firmly established that "interest on claims against the United States cannot be recovered in the absence of an express provision to the contrary in the relevant statute or contract." United States v. Tillamooks,341 U.S. 48, 49, 71 S.Ct. 552, 552, 95 L.Ed. 738 (1951). See also United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 588, 67 S.Ct. 398, 91 L.Ed. 521 (1947); United States v. Mescalero Apache Tribe, 518 F.2d 1309, 1315 (Ct.Cl.1975); Contra Costa County Flood Control and Water Conservation District v. United States, 512 F.2d 1094, 1098 n.11 (Ct.Cl.1975); Annot.,24 A.L.R.2d 928 (1952).
 
 
 25
 In this case, there is no "express provision to the contrary in the relevant statute or contract." Richerson points to 42 U.S.C. § 2000e-16(e), which incorporates into the Equal Employment Opportunity Act of 1972 some of the provisions of Title VII. Richerson then notes that several courts have inferred from the provisions of Title VII that interest is available in employment discrimination suits against private employers. See, e.g., Inda v. United Airlines, Inc., 405 F.Supp. 426, 435 (N.D.Cal.1975); Chastang v. Flynn & Emrich Co., 381 F.Supp. 1348, 1351-52 (D.Md.1974). Richerson suggests that 42 U.S.C. § 2000e-16(e) should therefore be viewed as an express statutory provision allowing interest against the government. We disagree.
 
 
 26
 42 U.S.C. § 2000e-16(e) incorporates certain provisions of Title VII, but "Title VII is silent as to the award of interest by a court." Chastang v. Flynn & Emrich Co., supra, at 1351. Since neither the Equal Employment Opportunity Act of 1972 nor the incorporated provisions of Title VII expressly authorize the award of interest against the government, we are precluded from allowing it. 42 U.S.C. § 2000e-16(e) cannot be accurately described as an "express provision" permitting interest on claims against the government simply because several courts have inferred that interest can be recovered in Title VII actions. When claims against private individuals are created by statute, courts have broad power to award interest "in the absence of an unequivocal prohibition." Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947). But when claims against the government are involved, the rule is just the opposite. Interest is proscribed unless expressly allowed. Since there is no express provision which permits interest against the government in this case, that portion of the district court's order of March 12 which allowed prejudgment and postjudgment interest must be reversed.[11]IV.
 
 PUNITIVE DAMAGES
 
 27
 Richerson argues that the district court erred in refusing to grant his request for punitive damages. Since the district court never discussed the issue of punitive damages, the basis for its refusal is unknown. Nevertheless, we affirm the district court's refusal to grant punitive damages, since we have concluded as a matter of law that such damages cannot be recovered in actions under the Equal Employment Opportunity Act of 1972.
 
 
 28
 As we noted earlier, the authority of courts to grant relief in actions brought under the Equal Employment Opportunity Act of 1972 is governed by the same statutory provision which applies in Title VII actions, 42 U.S.C. § 2000e-5(g).[12] That provision states in relevant part:
 
 
 29
 (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.
 
 
 30
 (Emphasis added.) We are convinced that 42 U.S.C. § 2000e-5(g) cannot be read to allow the award of punitive damages.[13] We are aware that at least one court has interpreted the phrase "any other equitable relief as the court deems appropriate" to include punitive damages. Claiborne v. Illinois Central Railroad, 401 F.Supp. 1022, 1026 (E.D.La.1975). Punitive damages, however, are a "traditional form of relief offered in the courts of law,"[14] not in the courts of equity. To hold that punitive damages are a form of equitable relief would be a gross distortion of language and of legal history. Nor can the phrase "such affirmative action as may be appropriate" be construed to include punitive damages. Viewed alone, this phrase would appear to refer to various types of mandatory injunctions. That interpretation is bolstered when the rule of construction ejusdem generis is invoked, since Congress listed the "reinstatement or hiring of employees, with or without back pay" as an example of the type of "affirmative action" it had in mind.
 
 
 31
 The legislative history of 42 U.S.C. § 2000e-5(g) also suggests that Congress did not intend to authorize the award of punitive damages. As the Supreme Court has observed, 42 U.S.C. § 2000e-5(g) was modeled closely on the provision of the National Labor Relations Act which empowers the N.L.R.B. to end unfair labor practices, 29 U.S.C. § 160(c). Albemarle Paper Co. v. Moody, 422 U.S. 405, 419 & n.11, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). 29 U.S.C. § 160(c) authorized the N.L.R.B., inter alia, "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter." 42 U.S.C. § 2000e-5(g) empowered the district court in Title VII cases to "order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay . . .." In explaining the provisions of the 1964 Civil Rights Act on the floor of the Senate, several of the Act's principal supporters referred to the fact that the relief permitted by Title VII was similar to the relief available under the N.L.R.B.[15] Since punitive damages are clearly not available under the N.L.R.A.,[16] the close relationship between 42 U.S.C. § 2000e-5(g) and 29 U.S.C. § 160(c) provides additional evidence that Congress did not intend to authorize the award of punitive damages under Title VII.[17]
 
 
 32
 The enactment of Title VIII (fair housing) in 1968 and the amendment of Title VII in 1972 furnish still additional support for our construction of 42 U.S.C. § 2000e-5(g). When Congress enacted Title VIII, it expressly provided for punitive damages.[18] Four years later, Congress undertook to amend 42 U.S.C. § 2000e-5(g), as well as other provisions of Title VII. Prior to the 1972 amendment, 42 U.S.C. § 2000e-5(g) authorized a court in a Title VII action to enjoin discriminatory employment practices and to order "affirmative action" such as "reinstatement or hiring of employees." When Congress amended 42 U.S.C. § 2000e-5(g) in 1972, it did not insert an express authorization for punitive damages similar to that which it provided in Title VIII. Instead, Congress merely added a provision which permitted courts to award "any other equitable relief as the court deems appropriate." This seems to us to be strong evidence that Congress did not intend to provide for punitive damages under Title VII. The contrast between Title VII's equitable remedies and Title VIII's legal remedies was highlighted by the Supreme Court in Curtis v. Loether, 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1975). As observed in General Electric Co. v. Southern Construction Co., 383 F.2d 135, 138 n. 4 (5th Cir. 1967), "where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute is significant to show a different intention existed."[19]
 
 
 33
 We conclude therefore, that the district court was clearly correct in refusing to grant punitive damages in this action brought pursuant to the Equal Employment Opportunity Act of 1972.
 
 V.
 ATTORNEY'S FEES
 
 34
 We are aware that the government voluntarily dismissed its appeal from the April 29, 1976 order awarding counsel fees and expenses to the plaintiff. In light of the detailed affidavits of plaintiff's counsel which support the application and the absence in the record of any evidence disputing these affidavits or the plaintiff's petition, we can understand why the government did not press its appeal as to this aspect of the plaintiff's recovery, particularly since the government has consistently maintained that the March 12, 1976, order was the final order in this action. The district court judge, however, in awarding counsel fees and expenses did not make the findings required by Lindy Bros. Builders, Inc. v. American Radiator & Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (Lindy II ), which is this Circuit's last expression concerning the standards and findings essential for the award of counsel fees. It is true that Lindy II was decided subsequent to the order of April 29, 1976, but our prior decisions also required district court findings. In re Meade Land & Development Co., Inc., 527 F.2d 280 (3d Cir. 1975); Lindy Bros. Builders, Inc. v. American Radiator & Sanitary Co., 487 F.2d 161 (3d Cir. 1973).
 
 
 35
 Since we must remand in any event for the reasons heretofore expressed and since our remand may very well implicate some of the grounds on which the award of counsel fees was predicated, we direct the district court upon remand to comply with our requirements in awarding attorney's fees by making the necessary findings to support any such award. By this direction, we do not intimate that we would follow the same course of action if a remand were not otherwise required. We expressly leave that question open. Neither do we express an opinion as to amount of fees which should be awarded based upon the findings to be made by the district court judge. That determination is one to be made by the district court.
 
 VI.
 CONCLUSION
 
 36
 We will therefore affirm so much of the district court's orders as denied punitive damages; awarded $1,020.74 for reimbursement of expenses; and directed Richerson's retroactive promotion to GS-9 and GS-11 on the effective dates indicated by the district court.
 
 
 37
 Inasmuch as the district court will be required to make additional findings as respects Richerson's promotion to GS-12 and the effective date thereof, the back pay provisions of the district court's order must necessarily be reversed for additional consideration depending upon the findings and conclusions reached by the district court on remand.
 
 
 38
 Accordingly, we will reverse so much of the district court's order as (1) provided for Richerson's promotion to GS-12 effective November 15, 1974; (2) established back pay provisions in accordance with its original determinations; (3) awarded prejudgment and postjudgment interest; and (4) awarded counsel fees in the amount of $27,500.
 
 
 39
 In addition, as previously noted, (p. 921 supra ), the appeal in No. 76-1385 must be dismissed.
 
 
 40
 The case will be remanded for further proceedings consistent herewith.[20]
 
 
 
 [1]
 42 U.S.C. § 2000e-16(a) provides, inter alia, that
 "(a)ll personnel actions affecting (federal) employees or applicants for employment . . . in military departments . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."
 
 
 [2]
 42 U.S.C. § 2000e-16(c)
 
 
 [3]
 28 U.S.C. § 1291 states:
 The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.
 
 
 [4]
 The order of December 18, 1975, is remarkably similar to the order which the Supreme Court held was not final in Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). Both orders settled the issue of liability but left the question of relief wholly unresolved. See our discussion at p. 922 infra
 
 
 [5]
 Nor do we believe that any other basis for appellate jurisdiction exists
 
 
 [6]
 Reply Brief for Appellant at 2
 6a In very similar circumstances, this Court held that a premature notice would be effective from the true date of appeal stating:
 Notice of appeal to the court of appeals was filed in the district court on March 11, 1974. Judge Hoffman's written order was filed March 14, 1974. The appeal was thus premature. See Moore, Federal Practice, P 204.14 at 981-82 (2d Ed. 1973). So long as the order is an appealable one and the non-appealing party is not prejudiced by the prematurity, however, the court of appeals should proceed to try the case on the merits, rather than dismiss on the basis of such a technicality. Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Hamilton v. Stillwell Van and Storage Co., 343 F.2d 453 (3d Cir. 1965).
 Hodge v. Hodge, 507 F.2d 87, 89 (3d Cir. 1975).
 
 
 [7]
 It goes without saying that Richerson's consent cannot create appellate jurisdiction over the government's appeal. Kaufman v. Liberty Mutual Insurance Co., 245 F.2d 918, 920 (3d Cir. 1957); 5 C. Wright & A. Miller, Fed.Prac. & Proc. § 1350 at 546. However, we believe that Richerson's failure to press for dismissal of the government's appeal substantiates our view that recognition of the government's appeal as timely will not prejudice Richerson
 
 
 [8]
 42 U.S.C. § 2000e-16(d) of the Equal Employment Opportunity Act of 1972 incorporates 42 U.S.C. § 2000e-5(f) to (k)
 8a The district court denied certification of Richerson's action as a class action. That ruling, however, has not been appealed by Richerson and is not before us on this appeal. Richerson has therefore maintained this proceeding as an individual action seeking individual relief. Accordingly, we have not found it necessary to discuss the nature or scope of remedy that might obtain if the district court had certified this action as a class action.
 
 
 [9]
 The government in its Memorandum in Support of Proposal for Damages Award claimed that GS-12 positions are supervisory and are awarded based upon competition. We cannot discern from the record whether these facts have been introduced into evidence or whether judicial notice may be taken of them. In light of our disposition, we think it appropriate for the district court to consider these factors either on this record or on such supplemental record as in the district court's discretion it deems warranted
 
 
 [10]
 As noted, the district court specifically found (finding of fact 67) that "but for the discrimination" Richerson would have been promoted to GS-9 as of November 15, 1970. Since the government does not contest Richerson's retroactive promotions to GS-9 and to GS-11, we have focused our review only on Richerson's status as a GS-12 and the necessary predicate for his promotion to that classification. Our action in remanding for necessary findings as to the GS-12 classification may necessarily affect to some degree the computation of back pay as it is provided in the district court's order of March 12, 1976. To this extent, the district court will also be required to consider anew any other remedies which are contingent upon the grade classification and the date on which it is effective
 
 
 [11]
 Richerson attempts to escape from the rule described above by analogizing his case to White v. Bloomberg, 501 F.2d 1379 (4th Cir. 1974), and Bituminous Casualty Corp. v. Lynn, 503 F.2d 636 (6th Cir. 1974). Those cases, however, are readily distinguishable from Richerson's
 In White, interest was permitted on a claim against the Postal Service because the Postal Service is authorized by statute "to sue and be sued in its official name." See 39 U.S.C. § 401(1). No similar authorization applies to the agency which employs Richerson, the United States Navy. We also note that White relied upon RFC v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), and FHA v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), which concerned the application of the doctrine of sovereign immunity to governmental corporations authorized to engage in commercial transactions with the public. See also Keifer & Keifer v. RFC, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); Asheville Mica Co. v. Commodity Credit Corp., 239 F.Supp. 383 (S.D.N.Y.1965). We express no view as to whether White was correct in concluding that the Postal Service, which is an "independent establishment of the executive branch" (39 U.S.C. § 201), should be governed by the rule applicable to governmental corporations.
 Lynn recognized the general rule that interest cannot be assessed against the government unless expressly permitted by statute. 503 F.2d at 643. But Lynn concerned an exception to that rule which applies when the government "embarks on a business venture" "on an equal footing with private parties." Id. at 643, 645. In Lynn interest was allowed on damages recovered under a contract of reinsurance issued by the Department of Housing and Urban Development pursuant to the Urban Property Protection and Reinsurance Act of 1968, 12 U.S.C. §§ 1749bbb-1 to 1749bbb-21. The Lynn court reached that result because it determined that HUD was "in the business of selling insurance." Id. at 645. Obviously, Lynn, is not authority for Richerson's position here.
 
 
 [12]
 See note 8 supra
 
 
 [13]
 The only other circuit which has considered this question has held that punitive damages are not available under Title VII. Equal Employment Opportunity Comm'n v Detroit Edison Co., 515 F.2d 301 (6th Cir. 1975), pet. for cert. filed 44 U.S.L.W. 3139 (August 14, 1975). District courts have split on this question, although the overwhelming majority have held that punitive damages are not available. The following cases hold that punitive damages are not permitted: Presseisen v. Swarthmore College, 71 F.R.D. 34, 45-46 (E.D.Pa.1976); Campbell v. A. C. Petersen Farms Inc., 69 F.R.D. 457 (D.Conn.1975); Whitney v. Greater N.Y. Corp. of Seventh-Day Adventists, 401 F.Supp. 1363 (S.D.N.Y.1975); Bradshaw v. Zoological Society, 10 F.E.P. Cases 1268 (S.D.Cal.1975); Jiron v. Sperry Rand Corp., 423 F.Supp. 155, 10 F.E.P. Cases 730 (D.Utah.1975); Loo v. Gerarge, 374 F.Supp. 1338 (D. Hawaii.1974); Howard v. Lockheed Georgia Co., 372 F.Supp. 854 (N.D.Ga.1974); Van Hoomissen v. Xerox Corp., 368 F.Supp. 829 (N.D.Cal.1973); Gutherie v. Colonial Bakery Co., 6 F.E.P. Cases 663 (N.D.Ga.1973); Attkisson v. Bridgeport Brass Co., 5 F.E.P. Cases 919 (S.D.Ind.1972). See also Humphrey v. Southwestern Portland Cement Co., 369 F.Supp. 832 (W.D.Tex.1973), rev'd on other grounds, 488 F.2d 691 (5th Cir.1974) (compensatory damages available)
 Punitive damages were awarded in Claiborne v. Illinois Central Railroad, 401 F.Supp. 1022 (E.D.La.1975). In addition, in the following cases pretrial motions to strike prayers for punitive damages were denied: Waters v. Heublein, Inc., 8 F.E.P. Cases 908 (N.D.Cal.1974); Gary v. Industrial Indemnity Co., 7 F.E.P. Cases 193 (N.D.Cal.1973); Dessenberg v. American Metal Forming Co., 6 F.E.P. Cases 161 (N.D.Ohio 1973); Tooles v. Kellogg Co., 336 F.Supp. 14 (D.Neb.1972); Tidwell v. American Oil Co., 3 F.E.P. Cases 1007 (D.Utah 1970). However, the rulings in Gary, Dessenberg, and Tooles were based at least in part on a reluctance to strike claims for punitive damages at a preliminary stage of the proceedings.
 Finally, we are aware that in Rosen v. Public Service Electric and Gas Co., 477 F.2d 90, 96 (3d Cir.1973), this Court stated that plaintiffs who were denied pension benefits because of sex discrimination could recover "compensatory damages" under Title VII. While Rosen referred to compensatory, rather than punitive damages, it could be argued, inasmuch as both types of damages are legal in character, that this Court in Rosen extended the "equitable relief" of the statute to forms of legal relief. Such an interpretation or "extension" is unwarranted. Rosen was unquestionably correct in concluding that wrongfully withheld pension benefits could be recovered under Title VII, but as the Supreme Court made clear in Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-17, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), that recovery is actually a form of equitable restitution rather than a form of legal damages. Accord, Burt v. Bd. of Trustees, Edgefield County School Dist., 521 F.2d 1201, 1208 (4th Cir. 1975); Whitney v. Greater N.Y. Corp. of Seventh-Day Adventists, supra at 1370 & n.6; Loo v. Gerarge, supra, at 1342 n.7.
 
 
 [14]
 Curtis v. Loether, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)
 
 
 [15]
 110 Cong.Rec. 6549 (1964) (remarks of Sen. Humphrey); id., at 7214 (memorandum by Sens. Clark and Case)
 
 
 [16]
 Consolidated Edison Co. v. NLRB, 305 U.S. 197, 235-36, 59 S.Ct. 206, 83 L.Ed. 126 (1938)
 
 
 [17]
 When Congress adopts the wording of a previously enacted statute, that adoption will usually carry with it the previous judicial interpretations of the wording. Carolene Products Co. v. United States, 323 U.S. 18, 26, 65 S.Ct. 1, 89 L.Ed. 15 (1944). See Albemarle Paper Co., v. Moody, supra, at 419, 95 S.Ct. 2362, in which the Court, after noting that Congress had modeled the back pay provision of 42 U.S.C. § 2000e-5(g) on 29 U.S.C. § 160(c) of the N.L.R.A., assumed that Congress was aware of the standards utilized by the N.L.R.B. in awarding back pay under 29 U.S.C. § 160(c)
 Several commentators and at least one court have argued against the application and effect of this rule in this context. Claiborne v. Illinois Central Railroad, supra, at 1024-25; Note, Developments in the Law Title VII, 84 Harv.L.Rev. 1109, 1262 (1971); Comment, Enforcement of Fair Employment under the Civil Rights Act of 1964, 32 U.Chi.L.Rev. 430, 467 (1965). In light of our overall analysis, we are not persuaded by these arguments.
 
 
 [18]
 42 U.S.C. § 3612
 
 
 [19]
 Some courts and commentators have argued that punitive damages would serve the policy of Title VII by encouraging victims of discrimination to initiate suits by deterring discrimination and by compensating victims for intangible injuries. See Note, supra note 17, at 1261-62. Compare Campbell v. A. C. Petersen Farms, Inc., supra, which argues that punitive damages are not necessary in order to achieve the twin objectives of Title VII identified in Albemarle Paper Co. v. Moody, supra: eliminating employment discrimination and making its victims whole. Campbell notes that since punitive damages are based on the defendant's culpability, they are ill-suited for making plaintiffs whole. In addition, Campbell observes that while punitive damages might assist in eliminating discrimination, Title VII contains other "strong medicine" for achieving that result. Under 42 U.S.C. § 2000e-5(g) a district court can enjoin violations and can order rehiring, promotion, and back pay. And civil contempt penalties are available if the court's injunctions are not obeyed
 
 
 [20]
 As indicated, the further proceedings to be conducted by the district court may be on the record heretofore established or on such supplemented record as the district court in its discretion may deem appropriate