James W. ARRINGTON

v.

UNITED STATES of America.

Civ. A. No. 72–1456.

United States District Court,
E. D. Pennsylvania.

Oct. 24, 1972.

James W. Arrington, pro se.

Robert E. J. Curran, U. S. Atty., Raymond E. Makowski, Sp. Atty., Philadelphia Strike Force, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BODY, District Judge.

Petitioner James W. Arrington has presented a motion pursuant to 28 U.S. C. § 2255 (1970) that this Court vacate the sentence imposed on him, set aside his plea of nolo contendere, and quash the indictment against him.

In the criminal case, on February 9, 1966, a United States Grand Jury in Philadelphia indicted James W. Arrington for conspiring to commit and committing gambling violations and using telephone lines illegally. His attorney on April 25, 1966 filed motions for a bill

of particulars, for discovery, and to suppress evidence. Hearings were held to consider these motions on May 25, 1966; April 8, 1968; and June 2–18, 1969. On January 7, 1970, Mr. Arrington changed his plea of not guilty to nolo contendere. This Court on April 2, 1970 fined him five hundred dollars ($500.00) and sentenced him to two years probation. One of the conditions of the probation was that Mr. Arrington not participate in any gambling activities. On February 1, 1972, it was determined that James W. Arrington had failed to pay his fine in full, so his probation was extended for two more years. On March 10, 1972, Mr. Arrington was arrested in the District of Columbia for gambling, and on May 5, 1972, he pleaded guilty in the District of Columbia to possessing slips for operating a lottery. On May 10, 1972, this Court after a hearing with a record of the petitioners guilty plea in Washington, D. C., plus the testimony of the two policemen who made the arrest, revoked James W. Arrington's probation and sentenced him to eighteen months in prison.

In a motion pro se, James W. Arrington alleges that the indictment returned on February 9, 1966 on which his original arrest, plea, and sentence were based was illegally obtained, that he was denied a speedy trial, and that he was denied the effective assistance of counsel.

■ Mr. Arrington correctly asserts that the Fifth Amendment of the United States Constitution guarantees that he cannot be prosecuted unless a valid indictment has been returned against him. It is the indictment that gives a court jurisdiction to consider a criminal charge. . If the petitioner successfully attacks the validity of the indictment, a plea of nolo contendere and a subsequent sentence must be set aside.

The petitioner alleges that the indictment against him was illegally obtained because the Grand Jury exclusively considered evidence and testimony that were the fruits of an illegal wire tap. The wire tap allegedly violated the Communications Act of 1934, 47 U.S.C. § 605 (1964), and the Fourth Amendment search and seizure provisions. Section 605 of Title 47 of the United States Code provides generally that no person engaged in transmitting messages may divulge the contents of any message to persons other than the intended recipient. The United States asserts that the telephone companies conducted the wire taps to protect their lines from trespassers, and courts have allowed such wire taps into evidence because Section 605 does not protect communications that are themselves illegal. United States v. Hanna, 404 F.2d 405 (5th Cir. 1968); United States v. Beckley, 259 F.Supp. 567 (N.D.Ga.1965).

■ Moreover, the government may use evidence illegally seized by private parties. Watson v. United States, 391 F.2d 927 (5th Cir.), cert. denied 393 U. S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1968). Therefore, arguably it does not violate either 47 U.S.C. § 605 (1964) or the Fourth Amendment for the government to use the wire taps made by the telephone company. The petitioner, however, seeks to overcome the government's argument by alleging that all telephone calls made were paid for. We interpret this allegation to mean that the telephone companies had no reasonable grounds to believe that the petitioner was trespassing on their lines. The Ninth Circuit has held that there must be reasonable grounds to believe that a person using the telephone lines is exceeding his right to the lines before a telephone company may monitor the user's calls, and the fruit of unwarranted telephone company wire taps may not be admitted into evidence. Bubis v. United States, 384 F.2d 643, 648 (9th Cir. 1967).[1] Consequently, a reasonable

---

1. More precisely, the Ninth Circuit in *Bubis* held:
   "When a subscriber of a telephone system uses the system's facilities in a

manner which reasonably justifies the telephone company's belief that he is violating his subscription rights, then he must be deemed to have consented to

question of law which is unresolved in this circuit arises. The petitioner, moreover, does not concede that the wire tap was performed without the aid of government authorities, so there is a factual dispute.

■ The issue of whether the wire tap was illegal, however, need not be resolved for two reasons. First, a grand jury may consider evidence not admissible in a criminal trial; and second, the motion is not timely.

■■ Abundant authority holds that an indictment returned by a legally constituted nonbiased grand jury is sufficient to start a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment. Lawn v. United States, 355 U.S. 339, 349, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957). The purpose of the grand jury system is to protect citizens from the excesses of biased or overly zealous and aggressive prosecutors. The grand jury's duty is to determine whether there is probable cause to believe that a crime has been committed and that a suspect has committed the crime. To this end, a grand jury may consider any evidence reasonable men might use to reach logical conclusions. At trial, the court will protect other rights of the accused through the use of the various evidentiary and constitutional exclusionary rules.

" . . . If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. . . . "

the company's monitoring of his calls to an extent reasonably necessary for the company's investigation. . . . To sanction [improper] . . . prac-

Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). In addition to the above authorities, the United States Court of Appeals for the Ninth Circuit has held specifically that a grand jury may consider evidence seized a violation of the Fourth Amendment. United States v. Thoresen, 428 F.2d 654, 664 (9th Cir. 1970).

■ Some authorities, however, suggest that a court may in its discretion quash an indictment if there is a total absence of competent or admissible evidence. United States v. Tane, 329 F.2d 848 (2d Cir. 1964); Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712 (1953), cert. denied, Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140; Manfredonia v. United States, 347 U.S. 1020, 74 S.Ct. 876, 98 L.Ed. 1141 (1954); Smith v. United States, 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262 (1955), 350 U.S. 938, 76 S.Ct. 310, 100 L.Ed. 819 (1956). One reason a court might quash an indictment obtained with no admissible evidence is that the grand jury has abdicated its role as an independent fact-finder and is acting as the tool of the prosecutor. Here, although the wire tap evidence may be inadmissible at trial, it would be extremely persuasive to convince a grand jury that illegal gambling had occurred and the people speaking during the wire tap were participants. The grand jury did not abdicate its role as buffer between the prosecution and the accused. Another possible reason for quashing an indictment when the grand jury has received no admissible evidence is that the prosecution might be trying to prevent a defendant from using grand jury testimony to cross-examine a witness at trial. This situation occurs only if the prosecution has access to eye-witnesses who are not called at grand jury proceedings. This practice is to be discouraged. United States v. Arcuri, 282 F.Supp. 347 (E.D.N.Y.), aff'd,

tices on the part of the telephone company would tend to emasculate the protection of privacy Section 605 was intended to protect. . . . "

405 F.2d 691 (2d Cir. 1968), cert. denied, 395 U.S. 913, 89 S.Ct. 1760, 23 L. Ed.2d 227 (1969). Mr. Arrington, however, makes no such allegation here.

The motion to set aside the guilty plea and sentence must be denied because it is not timely. Mr. Arrington waited until after his nolo contendere plea was accepted to challenge the indictment. A nolo contendere plea is an adjudication on the merits and waives all complaint as to evidence before the grand jury. West v. United States, 359 F.2d 50, 57 (8th Cir.), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966); United States v. Ptomey, 366 F.2d 759 (3d Cir. 1966); United States ex rel. Stephenson v. Mazurkiewicz, 311 F.Supp. 1202 (E.D.Pa.1970).

Mr. Arrington alleges that he was denied a speedy trial and effective assistance of counsel. The record before this Court, however, indicates that the delay in the trial was due to the sixty-five preliminary motions made by counsel for the twenty-three defendants. This record speaks both to the reasons for delay and the effectiveness of counsel. These allegations are without merit.