Louis Paul MATRANGA,
Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. A. No. 74–1801.

United States District Court,
D. South Carolina,
Columbia Division.

April 18, 1975.

Louis Paul Matranga, pro se.

Jack L. Marshall, Asst. U. S. Atty.,
Columbia, S. C., for respondent.

ORDER

HEMPHILL, District Judge.

This matter comes before the court on a motion filed by Louis Paul Matranga under 28 U.S.C. § 2255.

Petitioner was one of eleven persons indicted in this District on January 31, 1969, in a thirteen-count indictment charging conspiracy and burglary of federally-insured banks located in several southern states. His conviction was subject to subsequent appeal [1] and, after

---

[1]. United States v. Walden, 448 F.2d 925 (4th Cir. 1971), 458 F.2d 36 (4th Cir. 1972), 464 F.2d 1015 (4th Cir. 1972), cert. denied sub nom. 409 U.S. 867, 93 S.Ct. 165, 34 L.Ed.2d 116 and 410 U.S. 969, 93 S.Ct. 1436, 35 L. Ed.2d 705 (1973).

the appeal, the conviction engendered several post conviction matters.[2] Petitioner now claims, for the first time, that he was denied a speedy trial.

At the time of his indictment, petitioner was confined in the Louisiana State Penitentiary at Angola, Louisiana. On January 31, 1969, bench warrants were issued for the arrest of each defendant. Petitioner was quickly informed of the pending charges; on February 6 the Clerk of Court in Columbia, South Carolina received from petitioner a request for a copy of the indictment. The request was honored that same day. A Writ of Habeas Corpus ad Prosequendum was issued as to six defendants, including petitioner, on September 4, 1969. The Marshal's return reflects that petitioner was transferred to Columbia, South Carolina, on September 11 and 12. On September 16, petitioner executed an affidavit of indigency; two attorneys were immediately appointed. Petitioner was arraigned later that day and entered a plea of not guilty to the two counts in the indictment that charged him with the commission of federal offenses.[3] Seven and one-half months elapsed between time of indictment and arraignment.

The files and records maintained on this case reflect the vigorous defense of all defendants by their respective attorneys. Scores of motions were filed and heard by one of the three District Judges who were involved at one time or another in hearing this case. The defendants were permitted to join in motions made by others whenever this procedure would assist defendants or their attorneys; such practice magnified the scope of the pretrial motions disposed of in the case. Petitioner filed several motions during this period.

The records further indicate that petitioner and others were moved to and from this District on two or more occasions. For example, petitioner was returned to Louisiana during the period from December 5 to December 14, 1969.[4] On January 22, 1970, a writ was entered for his return to Columbia; it was executed on February 5 and petitioner arrived the following day. Following a mistrial, he was sent back to Louisiana on March 29, 1970 and was returned to Columbia on April 29.

The initial trial commenced on March 23, 1970, approximately thirteen and two-thirds months after indictment. During lunch recess on the third day of trial, certain members of the jury saw several defendants in handcuffs; a mistrial was declared. A second trial was commenced on May 12, 1970 (once again only after numerous motions and hearings) and was concluded on May 22, by the jury's verdict. Fifteen and one-third months elapsed between time of indictment and trial. On June 2, this court sentenced petitioner to fifteen (15) years imprisonment under 18 U.S. C. § 4208(a)(2), to run concurrently with the state sentence petitioner was serving in Louisiana.[5]

Petitioner now, fifty-four months after the conclusion of his trial, raises for the first time a claim that he was denied a speedy trial in this District.[6] Relying

2. In addition to several motions to reduce sentences, there have been four earlier § 2255 motions filed by other defendants. *See* Civil No. 73–1207, 73–1219, 74–590 and 74–1458 (this court). None of the prior motions raised the issue petitioner urges here.

3. Petitioner was charged in the conspiracy count and in count 9, charging that he entered a bank at Sharon, South Carolina, with intent to commit larceny. He was convicted on count 9 only. That count was not affected by the venue question which concerned the Court of Appeals when it considered the case after the *en banc* decision affirmed this court on a double jeopardy question which arose following a mistrial when the case was first tried.

4. Stops were made at the United States Penitentiary in Atlanta and at the Orleans Parish Prison.

5. See page 389; Record on Appeal, Indexed (hereinafter referred to as "Record"); Vol. IV, Transcript of Trial, 1169–71.

6. Three motions, none involving petitioner, have raised the speedy trial issue in this case. Assuming these motions were adopted by petitioner, all questions raised in these

on Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), petitioner alleges that delays between his indictment, arraignment and trial deprived him of his due process right to a speedy trial under the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States.

In *Strunk,* defendant moved for dismissal in the District Court on the ground of denial of his constitutional right to a speedy trial. The motion was denied, and he was convicted of the charge against him. The Court of Appeals reversed, holding that defendant had not been accorded a speedy trial. The Seventh Circuit also held that the appropriate remedy was not to dismiss the charges, but to reduce the defendant's sentence as compensation for the excessive delay. On appeal, the government chose to confine its argument to the remedial overlay; it chose not to cross-appeal the initial holding, upon which the remedy was based. The Supreme Court noted this situation, stating that "the only question properly before us for review is the propriety of the remedy fashioned by the Court of Appeals." *Id.* at 437, 93 S.Ct. at 2262. Chief Justice Burger continued by stating:

> Whether in some circumstances, and as to some questions, the Court might deal with an issue involving constitutional claims, absent its being raised by cross-petition, we need not resolve. Suffice it that in the circumstances presented here in which the speedy trial issue has been pressed by the accused from the time of arrest forward

prior motions related to pre-arrest delay, not to post-indictment delay. The Sixth Amendment right to a speedy trial does not apply to pre-indictment delay. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

7. The court recognized that "these factors have no talismanic qualities," *Barker,* at 533, 92 S.Ct. at 2193, but instead are "related factors . . . [which] must be considered together with such other circumstances as may be relevant." *Id.* For that reason, some courts have added other "factors" to

and resolved in his favor, we are not disposed to examine the issue since we must assume the Government deliberately elected to allow the case to be resolved on the issue raised by the petition for certiorari.

*Id.* Reversal was therefore *predicated* on "the unchallenged determination that petitioner was denied a speedy trial;" *Id.* at 440, 93 S.Ct. at 2264; reversal was *based* on the application of an improper remedy. Since the speedy trial issue is here being contested, *Strunk* is not controlling.

■■ "The right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The criteria by which the speedy trial right is to be judged was set forth by Justice Powell for a unanimous Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Court affirmed the finding of the District Court and the Court of Appeals that a five year delay in bringing an accused to trial, under the facts of that case, was not a denial of the due process right to a speedy trial. The Justices adopted a "balancing test" in which the conduct of both the prosecution and the defense are to be considered and weighed. In identifying "some" of the factors which courts must assess, the Court specifically noted four: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." [7] *Id.* at 530, 92 S.Ct. at 2192.

their list of considerations. The Fifth Circuit, for example, also weighs: the gravity of the offense, the likelihood of repetition, the number and complexity of legal and factual issues involved, the availability of evidence, and other relevant circumstances. *See* United States v. Palmer, 502 F.2d 1233, 1237 (5th Cir. 1974).

None of the four factors identified in *Barker* are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker, supra,* at 533, 92 S.Ct. at 2193. The Supreme Court has subsequently reaffirmed this view when it

252

**1. Length of delay**—in *Barker,* the Court stated that:

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is not necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Id.* at 530–31, 92 S.Ct. at 2192. The total delay in this complex conspiracy case was one of fifteen months; the delay held constitutional in *Barker* was one of five years.[8] The peculiar circumstances of this case involved the hearing of scores of motions, a point which has been addressed by the United States District Court for the Eastern District of Pennsylvania:

Mr. Arrington alleges that he was denied a speedy trial and effective assistance of counsel. The record before this Court, however, indicates that the delay in the trial was due to the sixty-five preliminary motions made by counsel for the twenty-three defendants. This record speaks both to the reasons for delay and the effectiveness of counsel. These allegations are without merit. . . .

Arrington v. United States, 350 F.Supp. 710, 713 (E.D.Pa.1972), aff'd (Table) 475 F.2d 1394 (3d Cir. 1973). The delay in this case raises no presumption of prejudice.

**2. The reason for the delay**—the *Barker* court stated:

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker, supra,* at 531, 92 S.Ct. at 2192. The nature of a conspiracy case with eleven defendants on trial necessitates some delay. Aside from security considerations (seven of the defendants were incarcerated at the time of indictment),

---

held, in Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), that an affirmative demonstration of prejudice to the accused is not prerequisite to showing a denial of his constitutional right to a speedy trial. "Inordinate delay, 'wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty'." *Id.*, at 27, 94 S.Ct. at 190. This interference may occur even "where a defendant is incarcerated after conviction in another State, . . ." *Id.*; *see also Strunk, supra,* at 439, 93 S.Ct. 2260, because of "the possible impact pending charges might have on his prospects for parole and meaningful rehabilitation." *Moore, supra,* at 27, 94 S.Ct. at 190.

When the factors listed in *Barker* are all applicable to a particular speedy trial claim, they should and must control the ultimate determination of a case. Such is the situation herein presented.

8. *See* United States v. Laborde, 496 F.2d 965 (6th Cir. 1974); United States v. Saglimbene, 471 F.2d 16 (2d Cir. 1972) (which was remanded by the Supreme Court in 1972) [408 U.S. 916, 92 S.Ct. 2488, 33 L.Ed.2d 328]. The delay from indictment to trial was six (6) years. There was a demand for a trial after five years, but the Second Circuit stated that the defendant had not shown that he had been prejudiced by the delay); McLeod v. United States, 455 F.2d 933 (5th Cir. 1971); Maxwell v. United States, 319 F.Supp. 269 (S.D.N.Y.1970), aff'd 439 F.2d 135 (2d Cir. 1971), cert. denied 402 U.S. 1010, 91 S.Ct. 2195, 29 L.Ed.2d 432. *See also* United States v. Ewell, 383 U.S. 116, 83 S.Ct. 773, 15 L.Ed.2d 627 (1966), which was cited with apparent approval in Barker, supra, at 532, n. 33, 92 S.Ct. 2182, and which involved a delay of approximately nineteen months.

arranging for all defendants and witnesses to be present for trial (and motions) represented a very real logistical problem for the court and support personnel and necessitated some delay. These are all legitimate reasons, serving to justify appropriate delay. There was no intentional delay by the government. No witness desired by the defendants was precluded from appearing because of the delay,[9] nor is there any allegation that the memories of witnesses called had deteriorated.

3. The defendant's assertion of his right—*Barker* provides:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*

*Id.* at 531–32, 92 S.Ct. at 2192 (emphasis added). Before this action was brought, petitioner never asserted his right to a speedy trial;[10] this failure weighs heavily against him.

4. Prejudice to the defendant—Justice Powell noted that

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Id.* Petitioner was serving concurrent federal and state prison terms when he was indicted and would have spent the time from January 31, 1969 until May 12, 1970 in the Louisiana State Penitentiary; hence there was no oppressive pretrial incarceration. Petitioner apparently had approximately ten and one-half years remaining on his state sentence; hence it is not readily apparent to this court how a speedy trial would have minimized petitioner's anxiety and concern over the pending charges. Lastly, there is no allegation that his defense was in any way impaired by the delays. The records demonstrate that most of the defendants, including petitioner, were each represented by two attorneys who did a superb job for their clients. Each attorney exercised all the skill at his command; a motion made by one defendant was made applicable by the court to all defendants. An allegation that delay impaired petitioner's defense, if made, would have been wholly frivolous. Petitioner was not prejudiced by the delay in this action.

9. All defendants founded an exception on the incident surrounding the ill witness (Wise). The Court of Appeals dismissed all grounds asserted on appeal, other than the venue issue, by stating: "We find no merit in the other allegations of error presented." Walden, *supra,* at 1020.

10. The record reveals that the government's case against all defendants rested substantially on the testimony of a co-defendant (Boland), who had entered a guilty plea under Fed.R.Crim.P. 20 in the District Court for the Western District of Tennessee. Many of the pretrial motions of petitioner and his co-defendants manifested a strong effort to thwart Boland's desire to plead guilty; hence delay, rather than an expedited trial, was the preoccupation of all other defendants during the period when these motions were under consideration. Boland's plea actually was postponed at least once.

The Supreme Court in *Barker* was careful to emphasize that its decision there expressed no disapproval of "presumptive" rules which might establish fixed time periods within which cases must be brought in normal circumstances. *Id.* at 530, n. 9, 92 S.Ct. 2182. Petitioner relies on a Second Circuit case, United States v. Flores, 501 F.2d 1356 (2d Cir. 1974), which was decided under such a rule. The court there held that under a court rule requiring a defendant to be brought to trial within six months from the date of arrest, Flores' six-month period began on the date he was originally charged even though the charge was later dismissed for lack of evidence; it did not begin on the date he was indicted after dismissal of the first charge. When petitioner here was tried, no such rule existed for this District; the current Rule 50(b) Plan for South Carolina became effective in 1973, long after petitioner's trial.

 Petitioner urges that the delay of his trial foreclosed his right to have the federal sentence he received here to run concurrently with his Louisiana sentence for the fourteen months he claims the government wasted before bringing him to trial. However, he was sentenced under 18 U.S.C. § 4208(a)(2); he therefore has the opportunity of earning a release on parole if he applies himself to that end. Because petitioner can exert an influence over how long he must remain incarcerated, his contention that he has been prejudiced by a delayed sentencing is speculative.[11]

Based on the files and records of petitioner's criminal case and on the authorities cited herein, this court has determined that petitioner's 28 U.S.C. § 2255 motion should be dismissed without a hearing.

With his motion, petitioner enclosed a Notice of Appeal to be used in the event this court was to enter an order adverse to him. This court directs the Clerk to return such notice to petitioner. A premature Notice of Appeal must be considered to be void and inoperative; once such a proceeding is approved, the deluge of prisoner Notices would make a mockery of the Federal Rules of Appellate Procedure.[12]

And it is so ordered.[13]

11. Petitioner has an extensive history of prior criminal activity. Record, Vol. 111. In United States v. Hauff, 461 F.2d 1061 (7th Cir. 1972), where a prisoner claimed that a delay militated against an earlier parole, the Court of Appeals characterized the contention as "fanciful, having in view his prior criminal record." *Id.* at 1067–68.

12. While not directly on point, these citations tend to support the rejection of petitioner's effrontery to the court: United States v. Matthews, 462 F.2d 182 (3d Cir. 1972), cert. denied 409 U.S. 896, 93 S.Ct. 123, 34 L.Ed.2d 153; United States v. Kokin, 365 F.2d 595 (3d Cir. 1966), cert. denied 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966); Bates v. Batte, 187 F.2d 142 (5th Cir. 1951), cert. denied 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616 (1951); Sampson v. Ampex Corp., 355 F.Supp. 242, 246 (S.D. N.Y.1971); 9 Moore's, Federal Practice 204.- 14.

13. In order that petitioner might be reminded of that which he apparently knows—his right to appeal—the Clerk is directed to thermofax and forward to him, by certified mail, Rule 3(a), Rule 3(c) and Rule 4(b), Federal Rules of Appellate Procedure, together with a thermofax of Form I attached to the Rules of Appellate Procedure.