**UNITED STATES of America, Appellee,**

v.

**HASHAGEN, Clinton Charles, Appellant.**

**No. 86–5145.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 19, 1986.

Resubmitted In Banc Under Third Circuit Rule 12(6) Jan. 30, 1987.

Decided April 23, 1987.

William Caprio, III, Williamsport, Pa., for appellant.

James J. West, U.S. Atty., David C. Shipman, Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Submitted Under Third Circuit Rule 12(6)
August 19, 1986.

Before BECKER, MANSMANN, Circuit Judges, and TEITELBAUM, District Judge.*

Resubmitted In Banc Under Third Circuit Rule 12(6) January 30, 1987.

Before GIBBONS, Chief Judge, SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal by Clinton Charles Hashagen from a conviction following a jury trial on two counts of distribution of a controlled substance, 21 U.S.C. 841(a)(1), presents an important question of appellate jurisdiction in criminal cases. Hashagen filed his notice of appeal after he was convicted but two days before he was sentenced and three days before judgment against him was formally entered. The panel to which this case was originally assigned found that the appeal was controlled by *United States v. Mathews*, 462 F.2d 182, 183–84 (3d Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 123, 34 L.Ed.2d 153 (1972), in which another panel had interpreted Federal Rule of Appellate Procedure 4(b)[1] to mean that a court of appeals lacks jurisdiction when a defendant files his notice of appeal before pronouncement of sentence.

---

\* Honorable Hubert I. Teitelbaum of the U.S. District Court, Western District of Pennsylvania, sitting by designation.

1. Rule 4(b) reads in pertinent part:
   In a criminal case, the notice of appeal by a defendant shall be filed in the district court within ten days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof.

In its internally circulated opinion, *see* I.O.P. Chapter 9A, the original panel in this case would therefore have dismissed the appeal because of Hashagen's three-day prematurity in filing his notice of appeal. We agree with the panel that the case is in a procedural posture squarely controlled by *Mathews,* and we have accepted it *in banc* in order to reconsider the rule *Mathews* announced.

The *Mathews* rule is harsh, and other circuits have rejected it. *See e.g., United States v. Curry,* 760 F.2d 1079 (11th Cir. 1985); *United States v. Moore,* 616 F.2d 1030 (7th Cir.1980). It is also at odds with our jurisprudence in civil cases: "a premature appeal taken from an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party." *Richerson v. Jones,* 551 F.2d 918, 922 (3d Cir.1977) (emphasis in original). For the reasons that follow, we overrule *Mathews* and adapt to criminal cases the rule *Richerson* announced for civil cases: a notice of appeal filed after verdict but before sentence, although premature, ripens into an appealable order when the judgment of sentence is entered. Because we have jurisdiction over Hashagen's premature appeal under this rule, we must reach the merits. Finding no basis for his assignments of trial error, we affirm the judgment of sentence.

## I. *APPELLATE JURISDICTION*

### A. *Procedural History*

On December 11, 1985, a jury returned a guilty verdict against Hashagen on both counts of his indictment. Hashagen moved for a new trial, which was denied on February 6, 1986. Twelve days later, on February 18, Hashagen filed a notice of appeal "from the Order denying post-trial motions, and the judgment of conviction upheld thereby." [2]

It was not until two days later, on February 20, that the district court sentenced

Hashagen to concurrent terms of nine months imprisonment and special parole terms of three years on each count. On the next day, February 21, the sentence was reduced to judgment when a judgment and commitment order was filed. Hashagen filed no subsequent appeal. Therefore, his only notice of appeal was filed three days before formal entry of the judgment.

### B. *The Language of Rule 4(b)*

To determine whether Hashagen's appeal was timely filed, we look to Federal Rule of Appellate Procedure 4(b), *see supra* n. 1. This rule begins with the command: "In a criminal case, the notice of appeal by a defendant shall be filed in the district court within ten days after the entry of the judgment or order appealed from." It has long been established that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States,* 302 U.S. 211, 212–13, 58 S.Ct. 164, 165–66, 82 L.Ed. 204 (1937). Therefore, the judgment of sentence is the point from which the ten-day time limitation of Rule 4(b) begins to run.

Hashagen, however, filed his appeal three days before his sentence was formally entered and thus technically before "entry of the judgment or order appealed from." Therefore, the issue presented by Hashagen's appeal concerns the effect of a filing that is three days premature. The second sentence of Rule 4(b) may be construed as addressing this situation. It provides that "[a] notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

The *Mathews* panel found that the second sentence of Rule 4(b) did not support jurisdiction over an appeal filed prematurely. In *Mathews,* the defendant filed a notice of appeal from a judgment of conviction and denial of post-trial motions five

**2.** Hashagen's notice of appeal explained that it was filed twelve days after the denial of his motion for a new trial "because the 16th of February (the 10th day from the date of the stated Order) was a Sunday, and the 17th was a national holiday and the Courts were closed."

days before sentence was entered.[3] The panel refused to base jurisdiction on that appeal, finding it "premature because '[a]n appeal may not be taken until the pronouncement of sentence....'" 462 F.2d at 183 (quoting *Corey v. United States,* 375 U.S. 169, 172, 84 S.Ct. 298, 301, 11 L.Ed.2d 229 (1963)).[4] It noted the rule's second sentence but found that it operated only to save a premature appeal where the notice of appeal is filed after the sentence is imposed but before the judgment is formally entered. Id. at 184 n. 2.

The *Mathews* panel's reading of Rule 4(b) is a plausible one. At least equally as plausible, however, is a reading that interprets this portion of Rule 4(b) to save a premature notice of appeal from a jurisdictional defect. Because the second sentence of Rule 4(b) is written in the disjunctive, this reading resists being constrained by the word "sentence." It finds that a premature notice of appeal is also one that is "filed after the announcement of a "decision" or "order" (i.e., the guilty verdict or the order denying the motion for a new

trial) "but before entry of the judgment" (i.e., the entry of the judgment of sentence). Under this reading the notice of appeal should be "treated as filed after such entry and on the day thereof."

Rule 4(b) thus presents the courts with a choice between two viable readings.[5] In deciding between the two, we find interpretive guidance from Federal Rule of Criminal Procedure 52(a), which provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Reading Rule 4(b) in conjunction with Rule 52(a), a premature criminal appeal should be operative unless the prematurity impairs substantial rights that Rule 4(b) seeks to protect—substantial rights that can only be ascertained with reference to the policies served by Rule 4(b). Thus, only if a notice of appeal filed after the verdict but before sentence offends the policies behind Rule 4(b) should it be held inoperative. Otherwise, the prematurity is an "irregularity ... which does not affect substantial rights" and ought to "be disregarded." Fed.R.Crim.P. 52(a).[6]

3. Additionally, in apparent realization that this appeal was premature, the defendant in *Mathews* filed a second notice of appeal eleven days after sentence. The panel found that the second appeal did not invoke the jurisdiction of the court because it failed to meet Rule 4(b)'s ten-day limitations period, albeit by only one day.

4. Although the panel relied heavily on this pronouncement in *Corey,* it is in fact dicta. *See United States v. Moore,* 616 F.2d 1030, 1031 (7th Cir.1980).

5. Rule 4(b) contains several substantial ambiguities that lend themselves to various interpretations. In the event that the Advisory Committee on Criminal Rules of the Judicial Conference deems Rule 4 worthy of review, the ambiguities described in this footnote may be of value to it. The third sentence of Rule 4(b) reads, "If a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction may be taken within 10 days after the entry of an order denying the motion." Read in isolation, this sentence would seem to sanction appeals taken before final judgment in any case in which one of the specified motions is denied more than ten days before sentence is imposed. This would commonly happen because, to allow time for preparation of a presentence investigation report, sentencing usually takes place at least 30

days after denial of a new trial motion or the guilty verdict (if no motion is filed). Read in conjunction with the first sentence of Rule 4(b), however, an appeal of such an order would only be operative if taken after entry of the final judgment. Thus, a court presented with the question would have to determine whether the third sentence of Rule 4(b) limits the first or vice versa.

This ambiguity, like that in Rule 4(b)'s second sentence was resolved by the holding of *Mathews.* In *Mathews,* the defendant attempted to invoke the liberal interpretation of Rule 4(b)'s third sentence by arguing that his appeal was from the district court's order denying the motions for a new trial. The *Mathews* panel rejected this argument on grounds that an order denying such a motion is not a final appealable order. *Id.* (citing *United States v. Rizzo,* 439 F.2d 694 (3d Cir.1971); *United States v. Jarrett,* 439 F.2d 1135 (3d Cir.1971)).

6. In *Mathews,* the panel did not discuss Rule 52(a) and identified no policy that would support its choice of a narrow reading of Rule 4(b). Rather the per curiam opinion was brief and essentially mechanical in its approach. We do not suggest that policy considerations can override clear and unambiguous language of a rule or statute. But when a rule is fairly susceptible to more than one interpretation, policy concerns may inform the court of the reading that is just and reasonable. We find that Rule 4(b),

### C. Policies Attendant to Notices of Appeal

Two policy interests have been identified as the animating forces behind Rule 4(b): "the practical necessities of judicial economy and finality of litigation on the one hand and fundamental notions of fair play on the other." Note, *Timely Appeals and Federal Criminal Procedure*, 49 Va.L. Rev. 971 (1963) (footnote omitted). Premature criminal appeals may implicate interests in judicial economy because, "until the entry of judgment, orders remain within the control of the district court and can be changed." J. Moore, B. Ward, J. Lucas, *Moore's Federal Practice* ¶ 204.14 (2d ed. 1986). As a general matter, courts of appeals are hesitant to hear prematurely filed appeals lest they overstep their function of review and interfere with ongoing matters in the district courts. In instances of prematurity such as the one presented in this case, however, the concern with interference would not be implicated by reading Rule 4(b) to hold the appeal operative upon entry of judgment. Because sentence must be imposed and judgment finalized for the notice of appeal to ripen, this court's hearing of the prematurely filed appeal would not interfere with the independent functioning of the district court. The court of appeals would not begin considering the case until the district court ends its involvement by formally entering judgment against the defendant.

Notions of fair play are intimately connected with Rule 4(b)'s requirement that one party notify the other of his intention to appeal. *Cf. United States v. Burns*, 668 F.2d 855, 858 (5th Cir.1982) ("notice of appeal is literally a 'notice' requirement"). Because a notice of appeal filed by a defendant after conviction but before sentence informs the government of the defendant's intention to challenge his conviction, we believe that anything less than an extraordinarily premature notice of appeal causes no prejudice to the prosecution and should be as effective in triggering an appeal as it is in providing notice to the appellant's adversary. Both because of the proximity in time of the relevant judicial actions (i.e., the "decision" or "order" and the "entry of judgment") and because notices of appeal are intended to benefit the government only in so far as they give notice, we find that notices of appeal filed after verdict but before sentencing allow the prosecution to assess allegations of error without causing prejudice by being awkwardly timed.

Moreover, notions of fair play and substantial justice combine with the strong public interest in assuring the lawfulness of convictions to favor a reading of Rule 4(b) that would not dismiss a prematurely filed but subsequently ripened criminal appeal. As the Court of Appeals for the District of Columbia has recognized on a number of occasions:

> in a criminal case in which a sentence of imprisonment is involved, there is a public interest against denial of consideration on appeal of substantial questions as to the lawfulness of the conviction. For if the conviction is erroneous it is abhorrent to justice that a defendant shall nevertheless suffer such a penalty for the crime charged.

*Blunt v. United States*, 244 F.2d 355, 361 (D.C.Cir.1957); *Christoffel v. United States*, 190 F.2d 585, 590 (D.C.Cir.1950).

This interest in fair play, however, must also account for considerations of effective prosecution. It would be unfair and would work against substantial justice if appeals predicated on inadequate notice were held operative, for they would deny the prosecution an opportunity to properly prepare for subsequent proceedings. If a notice of appeal is filed so prematurely that it does not properly apprise the opposing party of its intention to appeal the final judgment, it is prejudicial and should be considered inoperative. As Professors Wright and Miller phrase this concern, "[T]here must be some limits to the circumstances in which a premature notice can be

particularly its second sentence, is far from pellucid and would benefit from the policy analysis that the *Mathews* panel did not undertake.

given effect; it hardly would do to permit a party to file a general notice of appeal at the start of the action as a precaution to ensure timely filing." 16 C. Wright & A. Miller, *Federal Practice and Procedure* ¶ 3950, 1986 Supp. at 258.

The prematurity presented by this case—the filing of a notice of appeal after announcement of the verdict but before entry of the judgment—does not prejudice the government as does a general notice of appeal filed at the outset of the action, however. Indeed, the language of Rule 4(b) does not support the extreme prematurity of a general notice of appeal, for the rule requires the appeal to be filed after either a decision, a sentence, or an order. *Cf. Matranga v. United States,* 392 F.Supp. 249, 254 (D.S.C.1975) (criminal defendant's filing of a general notice of appeal "to be used in the event the court was to enter an order adverse to him" held to be inoperative); *United States v. Burns,* 668 F.2d 855, 858 (5th Cir.1982) (allowing premature criminal appeal absent "a showing of prejudice against the government").

Under the facts presented by this case, therefore, prejudice from prematurity is not a problem. Hashagen's notice of appeal, filed after the verdict was announced and within two days of imposition of sentence, provided the government with ample notice of his intention to appeal the final judgment. Indeed, we find it difficult to conceive of any set of circumstances in which the filing of a notice of appeal after verdict and before sentence could prejudice the government. At all events, the government in this case has alleged no prejudice, and we find no indication of prejudice in the record.

In sum, neither of the policies behind Rule 4(b) are offended by a premature notice of appeal filed after verdict but before sentencing. Under Federal Rule of Criminal Procedure 52(a), such a premature appeal therefore presents an "irregularity ... which does not affect substantial rights."

This policy predicate strongly suggests that we disregard the prematurity and find Hashagen's notice of appeal operative under Federal Rule of Appellate Procedure 4(b). We also note that the great weight of authority supports reading Rule 4(b) in conjunction with Rule 52(a). We now turn to this jurisprudence.

## D. *The Jurisprudence of Premature Criminal Appeals*

*United States v. Lemke,* 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3 (1953), marks the beginning of the jurisprudence of premature criminal appeals. In *Lemke,* the Supreme Court interpreted Federal Rule of Criminal Procedure 37(a)(2), the forerunner of Federal Rule of Appellate Procedure 4(b). At the time, Rule 37 had no provision specifically addressing premature appeals. It simply stated that "[a]n appeal by a defendant may be taken within 10 days after entry of the judgment or order appealed from." Lemke had been sentenced on March 10, 1952 after a jury verdict of guilty. He filed a notice of appeal on March 11, after sentencing but before judgment was entered on March 14. In ruling upon the efficacy of Lemke's appeal, the Supreme Court refused to read Rule 37 in isolation. Rather, the Court looked to Federal Rule of Criminal Procedure 52(a), found that the defect was an "irregularity" to be disregarded under that rule, and held that the court of appeals had erroneously dismissed the appeal for lack of appellate jurisdiction. This combined reading of Rules 37 and 52(a) was clearly predicated on a concept of notice. The Court noted that the March 11 notice of appeal "was still on file on March 14 [when judgment was entered] and gave full notice after that date, as well as before, of the sentence and judgment which petitioner challenged." *Id.*

Rule 37 was amended in 1966 to codify the holding in *Lemke. See* Report of the Judicial Conference, 29 F.R.D. 69 (1966). The identical language appears today in the second sentence of Rule 4(b). Since the *Lemke* decision and the amendment to the rules that followed it, several courts of appeals have had occasion to interpret the reach of the rule. Following *Lemke's* unitary reading of Rules 37 and 52(a), as well as its concept of notice, the Seventh and

Eleventh Circuits have applied *Lemke* to find premature notices of appeal operative under Rule 4(b).[7]

In *United States v. Moore,* 616 F.2d 1030 (7th Cir.1980), the Seventh Circuit allowed an appeal by a defendant who filed a notice of appeal after the verdict was entered but before sentence was imposed. The court focused on the concept of notice that underlies *Lemke* and reasoned that, just as in *Lemke,* Moore's notice of appeal was on file when a final judgment was entered and gave sufficient notice of the sentence defendant challenged. It therefore found that Rule 52(a) controlled and disregarded the prematurity as a harmless irregularity. *Id.* at 1032.

The Eleventh Circuit has also followed Lemke's Rule 52(a) notice analysis. In *United States v. Curry,* 760 F.2d 1079 (11th Cir.1985), the defendant's notice of appeal was filed after a guilty verdict but before sentencing. The court allowed the appeal in a per curiam opinion that explicitly followed the Seventh Circuit's decision in *Moore* and emphasized both Rule 52(a) and the concept of adequate notice. *See id.* at 1080.[8]

### E. The Rule We Adopt

Adherence to the *Mathews* decision would lead to an anomalous situation in this circuit. In criminal proceedings, where a defendant's liberty is at stake, a premature appeal would be fatal. In the civil context, however, where only property interests are implicated, a premature appeal becomes operative upon entry of the final order and in the absence of a showing of prejudice to the other party. *Richerson v. Jones,* 551 F.2d 918, 922 (3d Cir.1977); *see also Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 184–85 (3d Cir.1983); Fed.R. App.P. 4(a)(2).

**7.** In addition, these courts either distinguish *Mathews* or explicitly reject its approach.

**8.** Both the Seventh and Eleventh Circuits found collateral support for their decisions in the 1979 amendments to Fed.R.App.P. 4(a)(2), dealing with civil appeals. We note that these circuits were unwilling to ground their decisions solely on this basis. Because this line of reasoning neither presents a straightforward analysis of Rule 4(b) nor refers to the policies underlying notices of appeal, we too are unwilling to find it dispositive. In the interest of completeness, however, we set forth this alternate reasoning. Rule 4(a)(2) was amended with language almost identical to Rule 4(b)'s second sentence: "A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." The Advisory Committee notes indicate that the amendment was to "extend to civil cases the provisions of Rule 4(b), dealing with criminal cases, *designed to avoid the loss of the right to appeal by filing the notice of appeal prematurely."* Fed.R. App.P. 4 advisory committee's note (emphasis supplied). However, the 1979 amendments also added an exception to this rule in civil cases under Rule 4(a)(4): "A notice of appeal filed before the disposition of any [post-trial] motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion...." Fed.R.App.P. 4(a)(4). On the basis of this language in Rule 4(a)(4), the Supreme Court has found that, in civil cases, a notice of appeal "simply self-destructs" when filed before the district court has resolved a post-trial motion that would be dispositive of the case's outcome. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); *see also Knight v. Brown Transportation Co.,* 806 F.2d 479, 483–84 (3d Cir.1986). No similar language modifies the rule dealing with criminal appeals. *See* Fed.R. App.P. 4(b).

The Seventh Circuit found it significant that, although the reasons for the exception as expressed by the Advisory Committee would be equally applicable to criminal appeals, no parallel change was made in Rule 4(b). "It is reasonable to infer that the reason for the Committee's failure to [similarly amend Rule 4(b) ] was its reluctance to impose technical obstacles to appeals on the merits of criminal cases." *Moore,* 616 F.2d at 1032 n. 2. The Eleventh Circuit followed the *Moore* interpretation of the rule and rejected the *Mathews* approach in part because "*Mathews* was decided before the 1979 amendment to Rule 4, and *Moore* after the amendment." *Curry,* 760 F.2d at 1080 (footnote omitted).

Despite the absence of a specific provision in Rule 4(b) paralleling Rule 4(a)(4), one circuit has held that a notice of appeal filed while post-trial motions are pending in a criminal case should be dismissed as premature. *See United States v. Jones,* 669 F.2d 559 (8th Cir. 1982). We note, however, that that circuit was uncomfortable with the harshness of a rule such as that announced in *Mathews,* and therefore held that "when the defendant is not notified [by the Clerk of Court] that his appeal has been prematurely filed, we reserve the right to exercise appellate jurisdiction based on the premature notice." *Id.* at 561.

The *Richerson* opinion comports with the rule preferred by commentators for both the civil and criminal contexts. Professors Wright and Miller have written that "a premature notice of appeal [is] to be effective upon the filing of the judgment or order appealed from in civil cases, as it now is in criminal cases under Rule 4(b)." [9] 16 C. Wright & A. Miller, *Federal Practice and Procedure* 3950, 1986 Supp. at 258. Nothing in the language of Rule 4, its history, or its underlying policies justifies this circuit's inconsistent treatment of premature civil and criminal appeals. In our view, a premature notice of appeal in a criminal case should be operative, just as it is in a civil case, if it adequately gives notice and causes no prejudice. Having caused no prejudice, *see supra* at 11–12, the prematurity of the post-conviction but pre-sentence appeal in a criminal case is an irregularity worthy of disregard under Rule 52(a).

■ We therefore find that *Richerson* announces the better rule and we overrule *Mathews*. We hold that a notice of appeal filed after a verdict but before sentencing will ripen and be regarded as an appeal from the final order once judgment has been formally entered.[10] This conclusion is a faithful reading of Rule 4(b), draws upon Rule 52(a), and is informed by the concepts of fairness and notice that constitute the underpinnings of *Lemke, Moore* and *Curry.* Hashagen's notice of appeal fits squarely within this rule, and we therefore hold that we have jurisdiction to reach the merits of the appeal.

## II. *THE MERITS*

■ Hashagen grounds his appeal on two alleged errors in the district court. He first claims that the government recorded his conversation with one Larry Lockavich,

a government informant, without obtaining a voluntary consent from either party. The consent obtained from Lockavich, alleges Hashagen, was coerced and thus involuntary. Hashagen therefore claims that the district court erroneously denied his motion to suppress tainted fruits of an illegal wiretap.

Introduction into evidence at a criminal trial of recordings of a defendant's private conversations does not violate the Constitution if another party to those conversations voluntarily consented to the recording. *United States v. Caceres*, 440 U.S. 741, 744, 99 S.Ct. 1465, 1467, 59 L.Ed.2d 733 (1979); *United States v. Moskow*, 588 F.2d 882, 891 (3d Cir.1978). Under the totality of the circumstances test, *see United States v. Kelly*, 708 F.2d 121, 125 (3d Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983), the district court found that Lockavich knowingly and voluntarily consented to the tape recording of his conversations with Hashagen. His consent was not "the result of a coercive overbearing of his will," *id.*, even if his motives were self-seeking and he harbored expectations of personal benefit through a plea bargaining arrangement. *Id.* at 126.[11] We are restricted in our review of this claim to the clearly erroneous standard, *see United States v. Birdman*, 602 F.2d 547, 564 (3d Cir.1979), and, having read the record with care, we are satisfied that the district court's findings that undergird its denial of the motion to suppress were not clearly erroneous. Because Lockavich's consent to the recordings was voluntary, their admission against Hashagen was not improper.

■ Hashagen's second claim is that the district court committed reversible error when it foreclosed a line of questioning that would have adduced testimony from

---

9. Because of *Mathews*, neither courts nor litigants in this circuit could be as sanguine as Professors Wright and Miller that Rule 4(b) operates to save premature criminal appeals.

10. Since it is not our desire to encourage premature appeals but only to further the ideal of substantial justice, see supra at 9–10, we also hold that such a premature appeal is dismissible if the government, for some reason, formally

moves to dismiss it before sentencing. Such a motion must put the defendant on actual notice of the defect and thus permit him to renew the appeal while it will still be effective.

11. Neither does the record support the contention that Lockavich was incapacitated by his voluntary use of cocaine at the time he gave his consent.

Lockavich, the informant, to the effect that he had tried to give Hashagen one hundred doses of LSD the evening that Hashagen was arrested—some four months after the alleged crime. It is Hashagen's contention that the jury would have given his entrapment defense more credence had the district court allowed the proffered testimony into evidence.

Our review of this evidentiary matter proceeds under the abuse of discretion standard. *See United States v. Long*, 574 F.2d 761, 767–68 (3d Cir.1978). Again we have examined the record and are satisfied that the district court's foreclosure of the line of questioning did not constitute an abuse of discretion.

Hashagen was arrested on August 22, 1985 for violations of federal drug laws that had occurred on March 15 and 19 of that year. Because the focus of the entrapment defense is the subjective predisposition of the defendant to commit the crime, *see United States v. Jannotti*, 673 F.2d 578, 596–97 (3d Cir.1982) (in banc), *cert. denied*, 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984), the conduct of a government agent more than five months later is of little if any relevance to the entrapment defense. Evidence concerning such conduct may therefore be excluded by the trial judge under the Federal Rules of Evidence. Any inducement by Lockavich on or leading up to the events of March 15 and March 19 was certainly relevant to the question of Hashagen's predisposition since the nature and extent of such inducements would bear directly on whether or not Hashagen was a ready and willing participant in the transactions charged. However, the proffered testimony concerned Lockavich's alleged conduct five months after the crimes charged. It was therefore well within the discretion of the trial judge to find that the evidence had no relevance to the entrapment issue. *Cf. United States v. Goguen*, 723 F.2d 1012, 1020 (1st Cir.1983) (evidence that the defendant in a perjury case told a government agent two months after his jury testimony that he desired to rectify mistakes he made in that testimony was not relevant to defendant's

state of mind at the time of the crime charged).

The judgment of the district court will be affirmed.